FARMERS' BANKING & TRUST COMPANY *v.*
LEO BENDER, Trustee

[Nos. 81, 82, October Term, 1938.]

*Decided January 11th, 1939.*

626

The cause was argued before BOND, C. J., OFFUTT, PARKE, SLOAN, SHEHAN, and JOHNSON, JJ.

*L. Vernon Miller* and *G. Van Velsor Wolf*, with whom were *Albert M. Bouic* and *Marbury, Gosnell & Williams*, on the brief, for the appellant.

*Leo Bender*, for the appellee.

JOHNSON, J., delivered the opinion of the Court.

The record in this case contains two appeals from the Circuit Court for Montgomery County, in equity. The first is from an order sustaining plaintiff's demurrer to certain paragraphs of the defendant's answer in a proceeding filed by the substituted trustee of a trust estate created by the will of Philemon M. Smith, deceased, while the second is from a final decree requiring appellant to reimburse the trust estate to the extent of $1684.04, with interest from December 8th, 1932. The final decree was passed after the proceedings had been submitted by the parties for decree upon plaintiff's amended bill and the part of defendant's answer thereto that was not the subject of the demurrer. The effect of this was to admit the truth of the matters stated in the answer that were susceptible of proof by legitimate evidence. *Miller's Equity Procedure*, sec. 225; *Farmers' & Planters' Co. v. Salisbury*, 136 Md. 617, 111 A. 112; *Kimmell v. Westernport*, 140 Md. 506, 117 A. 748; *Manor Coal Co. v. Beckman*, 151 Md. 102, 133 A. 893; *Seeley v. Dunlop*, 157 Md. 378, 146 A. 271; *Kraft v. Highland Permanent Bldg. Assn.*, 165 Md. 570, 169 A. 71; *Evans v. Crisfield*, 122 Md. 184, 89 A. 430.

The facts in the case as determined by the pleadings and on which appellee relies to sustain an affirmance with respect to the ruling on demurrer and also the final decree are as follows:

Thomas I. Fulks was by decree of the Circuit Court for Montgomery County, on March 15th, 1932, appointed substituted trustee under a trust of $10,000 created by the will of Philemon M. Smith, deceased. Fulks continued as substituted trustee until August 5th, 1935, when he departed this life. On September 4th, 1935, John E. Oxley was by order of the same court appointed substituted trustee instead of Fulks. However, Oxley discovered that Ignatius T. Fulks, the original trustee under the Smith will, had loaned some of the trust funds to his son, Charles A. Fulks, which funds were secured by judgments which Oxley, the last named trustee, deemed uncollectible, and since Oxley felt that the situation might require litigation against the estate of Ignatius Thomas Fulks, of which Oxley was also trustee, he considered it improper to act further as substituted trustee of the trust created by the Smith will, and, upon petition setting out those facts, he was by the chancellor, on March 7th, 1936, relieved of his duties, and in his place Leo Bender, Esquire, was appointed. At that time Oxley had received none of the trust funds belonging to the estate and had made no disbursements. Bender, the succeeding trustee, qualified promptly, and on July 29th, in the same year, filed the bill of complaint, but on November 24th, 1937, secured leave of court to file an amended bill against appellant, a corporation, which on December 6th, 1932, was organized and doing a general banking business in the State of Maryland, on which date Thomas I. Fulks was personally indebted unto it in the sum of $1684.04, in settlement of which, on the same date, he gave the check of himself as "Trustee" for the same amount, payable on the First National Bank of Gaithersburg. The account last named consisted of funds belonging to the trust created by the Smith will, but Fulks, the trustee, was in no way indebted to appel-

lant in his fiduciary capacity. The check was accepted by appellant in payment of Fulks' personal indebtedness, and, after being endorsed, was transmitted to the drawee bank and paid two days later. The trust estate was not in any manner indebted to appellant, nor was the check drawn from the trust funds in pursuance of any order of the Circuit Court, nor by virtue of any authority contained in the Smith will; moreover, it was drawn without the consent or acquiescence of the beneficiaries of the trust, and, at the time the original bill and amended bill were filed, it had never been repaid to the trust estate, although demand for its payment had been made to appellant.

Since it seems clear that a claim of this character may be pursued in equity as well as at law, upon the theory that equity will consider the recipient as constructive trustee of the funds by operation of law (*Restatement of Law of Trusts,* Sec. 288; *Perry, Trusts and Trustees* (7th Ed.) sec. 217; *Corbett v. Hospelhorn,* 172 Md. 257, 191 A. 691), it would seem to follow that if no error was committed by the chancellor in sustaining a demurrer to certain paragraphs of appellant's answer, the final decree was proper under the facts previously stated, in view of section 5 of article 37A of the Code (Supp. 1935), in which it is provided: "* * * If, however, such instrument is payable to a personal creditor of the fiduciary and delivered to the creditor in payment of or as security for a personal debt of the fiduciary to the actual knowledge of the creditor, or is drawn and delivered in any transaction known by the payee to be for the personal benefit of the fiduciary, the creditor or other payee is liable to the principal if the fiduciary in fact commits a breach of his obligation as fiduciary in drawing or delivering the instrument."

It, therefore, becomes necessary to consider the correctness of the order passed by the chancellor sustaining the demurrer to certain parts of appellant's answer. The part of the answer which raises the principal question presented is paragraph 10, which contains an allegation

that the cause of action did not accrue within three years before the filing of the amended bill. An important question presented at the outset is whether, under the facts and portion of the statute previously quoted, limitations is a defense to the suit. The answer would seem to depend, first, upon the phraseology of the statute and a consideration of the purposes intended to be accomplished by its enactment, and, if nothing can be determined from these sources, recourse must be had to the status of appellant in accepting the check of the fiduciary in payment of a personal obligation of the latter. If it be found that the transaction is one to which section 1 of article 57, known as the "Statute of Limitations," applies, the final inquiry would relate (a) as to when it began to run, and (b) whether the period of three years for enforcing the action had expired prior to July 29th, 1936, the date upon which the suit was originally instituted.

The statute in question (article 37A of the Code) is known as the "Uniform Fiduciaries Act" and has been adopted by many States of the Union and also for the District of Columbia. It was first approved by the National Conference of Commissioners on Uniform State Laws in 1922, and its general scope and purpose were by its framers intended to cover situations arising where one dealt with another knowing him to be a fiduciary. From their notes, we quote:

"Questions relating to actual or constructive notice of the existence of a trust or other fiduciary obligation are not within the scope of the Act; it deals with questions relating to notice of the breach of a fiduciary obligation.

"The liabilities of the fiduciary himself are not dealt with, but only the liabilities of the person dealing with the fiduciary.

"The general purpose of the Act is to establish uniform and definite rules in place of the diverse and indefinite rules now prevailing as to 'constructive notice' of breaches of fiduciary obligations. In some cases there should be no liability in the absence of actual knowledge

or bad faith; in others there should be action at peril. In none of the situations here treated is the standard of due care or negligence made the test." 9 *Un. Laws Ann.* pages 147, 148.

In the notes under sections 4, 5 and 6, 9 *Un. Laws Ann.*, pages 151, 152, reference is made to section 56 of the Negotiable Instruments Law (Code, art. 13, sec. 75), and it is there stated that the effect of that section and sections 4, 5 and 6 of the Uniform Fiduciaries Act (Code [Supp. 1935] art. 37A) is to bring cases involving fiduciaries into harmony with the principle intended to be laid down in the first mentioned section; that the latter sections supplement but in no way contradict the Negotiable Instruments Law, and in the discussion under section 5 of the Fiduciaries Act, in cases where the instrument is drawn by the fiduciary payable to his personal creditor as security for his personal debt, it is stated that there is a strong presumption that the fiduciary is acting improperly, and, in such cases, the holder is liable unless the fiduciary was in fact acting properly. That distinction was recognized in the Massachusetts cases cited in 34 *Harvard Law Review*, 454, note 26.

Since the Uniform Fiduciaries Act is of comparatively recent origin, appellate decisions construing that part of section 5 with which we are here concerned are not numerous, and but one has been found dealing with the defense of limitations in a suit to enforce liability thereunder.

In *Union Bank & Trust Co. v. Girard Trust Co.*, 307 Pa. 488, 161 A. 865, the Supreme Court of Pennsylvania was called upon to construe the first part of section 5 of the Act. In reversing the judgment appealed from, it was held that the words of section 5 should have the same construction as section 56 (Code, art. 13, sec. 75) of Negotiable Instruments Act in the interest of desirable uniformity in the construction of commercial paper. Except to show the analogy between the two sections, the decision has no direct bearing upon the problem here presented.

Subsequently the same court, in *Pennsylvania Co., etc., v. Ninth Bank & Trust Co.*, 306 Pa. 148, 158 A. 251, had occasion to consider the effect of a plea of limitations under the Act. There the trustee of the estate of Charles F. Hall, deceased, overdrew his personal account which was carried in the same bank in which the trust funds were on deposit. Accordingly, he drew a check as fiduciary to his own order in the sum of $4,000 and on the following day deposited it in his overdrawn personal account, thereby paying his personal indebtedness to the bank. This was not discovered until after the death of the trustee six years later, when a succeeding trustee was appointed and brought the suit to recover the funds improperly diverted.

It was held that the Act simply expressed the previously existing law (*Norristown-Penn Trust Co. v. Middleton*, 300 Pa. 522, 150 A. 885), and since the bank was the depositary of the fiduciary funds as well as of funds belonging to the trustee in his individual capacity, liability was established under section 9 of the Act, 20 P. S. Pa. sec. 3393, since the bank not only had actual knowledge of the breach of the trust on the part of the fiduciary, but was a party thereto. It was held that limitations did not constitute a defense to the action, since the bank, having joined in the breach, became a trustee *ex maleficio* and held the property impressed with the same trust, subject to the same rules and remedies as did the fiduciary. That holding was based for the most part upon the decisions of that state, and the case of *Duckett v. National Mechanics' Bank*, 86 Md. 400, 38 A. 983, where Chief Judge McSherry, speaking for the court, stated that the statute of limitations could not be invoked by a participant in a breach of trust any more than by the trustee himself, citing *Pomeroy's Equity Jurisprudence* (4th Ed.), sec. 1080. But it should be noted that the author does not sustain the broad doctrine there announced, the text holding only that liability may be enforced against the trustee or, if he died, against his estate, and that limitations will not be admitted as a

defense unless the statutory language is express and mandatory upon the court. Previously, in section 418, he stated that laches may be invoked in all classes of cases "except perhaps those brought to enforce a trust against an express trustee," while in the following section it is said that equity has not followed the analogy of the statute of limitations in suits brought against trustees to enforce express trusts. See, also, annotation, 114 *A. L. R.* p. 1065 *et seq.*

In *Peoples v. Ault,* 128 Md. 401, 97 A. 711, the statute was held to be no defense under section 14 of article 57, the adverse party having kept him in ignorance of his claim, while a reference to the opinion in *Duckett v. National Mechanics' Bank, supra,* discloses that the question of limitations did not there arise, since limitations had not been pleaded. Moreover, to accept the decision in the *Duckett* case as binding authority for the proposition that constructive trustees could not plead limitations would conflict with later decisions of this court in which the right to plead the statute as a bar was specifically recognized as not being inconsistent with the prior decision. *Barroll v. Forman,* 88 Md. 188, 40 A. 883; *American Bonding Co. v. National Mechanics' Bank,* 97 Md. 598, 55 A. 395. See, also, *Weaver v. Leiman,* 52 Md. 708, 710; *Crook v. Glenn,* 30 Md. 55; *Estate of Leiman,* 32 Md. 225.

As to the statute previously quoted, it is sufficient to say that nothing is therein contained which discloses a legislative intent that the remedy there given for the enforcement of the right in any way differs from other remedies as to which the statute is pleadable. The effect of that part of section 5 under consideration is simply to put on notice the bank accepting the fiduciary's check in payment of his individual indebtedness, and if in such cases no inquiry is made and the fiduciary's check is accepted by the bank, and it develops that the trustee's individual debt has been paid out of trust funds, the liability of the bank imposed by the statute accrues at the time of such wrongful diversion, and equity, for the purpose of enforcing the remedy against the bank, treats

it as an implied or constructive trustee of the funds which it received in such manner. Except for the holding in *Pennsylvania Co. v. Ninth Bank & Trust Co., supra,* and cases there cited, we have found no decision in Maryland or any other jurisdiction denying the right of a constructive trustee to plead limitations, but on the contrary the great weight of authority is to the effect that in such cases the statute is pleadable. *Barrol v. Forman, Weaver v. Leiman, Crook v. Glenn,* and *Insolvent Estate of Conrad Leiman, supra;* 17 *R. C. L.,* par. 66; 37 *C. J.* pages 719 and 909; *Pomeroy's Equity Jurisprudence, supra, Terry v. Davenport,* 185 Ind. 561, 112 N. E. 998; *Lee v. Hoover,* 72 Ind. App., 126, 124 N. E. 783; *Bogert, Trusts and Trustees,* 995; *Perry on Trusts and Trustees* (7th Ed.), sec. 858. The conclusion that the statute of limitations is a defense to the present suit is unaffected by section 14 of article 57 of the Code, for here the bank has not fraudulently or otherwise kept the adverse party in ignorance of his right to sue. *Perry, Trusts and Trustees* (7th Ed.) sec. 857; *Consolidated Public Utilities Co. v. Baile,* 152 Md. 371, 136 A. 825. And since the bank's conduct in accepting the check can in our judgment amount to no more than constructive fraud within the meaning and terms of the statute, it must be held that limitations began to run from the time it accepted the diverted funds.

For the reasons assigned, it follows that the chancellor was in error in sustaining appellee's demurrer to the tenth paragraph of appellant's answer, which interposed the defense of limitations, and since the statute is in this case a complete bar to the suit, it becomes unnecessary to consider the remaining paragraphs of the answer, as to which the demurrer was likewise sustained. Upon these conclusions, it must be held that the final decree which was passed upon the assumption that the ruling on demurrer was correct was likewise erroneous.

*Order in No. 81 reversed, decree in No. 82 reversed, and bill dismissed, with costs to appellant.*