WESTERN SURETY COMPANY v. FARMERS & MERCHANTS STATE BANK OF BRECKENRIDGE.[1]

March 5, 1954.

No. 36,182.

[1]Reported in 63 N. W. (2d) 377.

*Leo A. Reuther* and *Kirby, Simons, McDonnell & Kirby,* for appellant.

*Nelson & Clemmensen,* for respondent.

THOMAS GALLAGHER, JUSTICE.

Western Surety Company, a corporation, hereinafter referred to as the surety company, obligor on a bond furnished to August Johnson, as treasurer of Consolidated School District No. 14, Wilkin county, brings this action against Farmers & Merchants State Bank of Breckenridge, hereinafter referred to as the bank, to recover the sum of $2,250 paid by the surety company under its bond to Consolidated School District No. 14 to reimburse the latter for funds in that amount embezzled from it by Johnson during his term in office.

The surety company's action is based on the claim that the bank aided Johnson and participated with him in his defalcations and thereby became indebted to the surety company as subrogee of the school district for the $2,250 embezzled.

The trial court determined that there was no special agreement between the school district and the bank, or between Johnson, as treasurer, and the bank, governing deposits or withdrawals of the district funds or the manner in which the account was to be handled;[2] that Johnson, as treasurer, was authorized by the school district to sign checks and to make deposits in and withdrawals from the bank in his name alone; that during the years in which he was treasurer he made deposits and withdrawals which exceeded the sum of $100,000; and that in the transaction here challenged the bank did not benefit or profit by his defalcations and was not liable therefor. Based upon such findings, the trial court ordered

---

[2] The deposits were not made under a deposit agreement pursuant to M. S. A. 127.07 so as to bind the bank by any special instructions or limitations ordinarily expressed in such an agreement.

judgment of dismissal of the action on the merits. This is an appeal from the judgment entered pursuant thereto.

The undisputed facts concerning Johnson's embezzlement of school district funds are as follows: On June 29, 1951, Johnson brought to the bank checks totaling $11,906.34, the property of the school district. At his request, the bank teller prepared a deposit slip listing checks totaling $9,656.34 to the credit of the school district and issued a cashier's check for the balance in the sum of $2,250 to Johnson Repair Shop, the name under which the treasurer conducted his personal business. This cashier's check was immediately deposited in the bank to the account of Johnson Repair Shop. The funds represented thereby, together with other funds on deposit in this account, were thereupon used by Johnson in the purchase of a cashier's check from defendant in the sum of $2,819 payable to J. I. Case Company which was delivered by Johnson to the latter in payment of his personal indebtedness thereto. It is the surety company's contention that the actions described established the bank's active participation in Johnson's embezzlement.

In a memorandum made a part of the order for judgment of dismissal on the merits, the court stated:

"The agreed facts here show that the treasurer deposited a part of the school district money in the school district account and a part of it in his own account. * * * $9,656.34 to the school district account and $2,250.00 to the Johnson Repair Shop account. These facts seem to bring the case squarely within the provisions of Section 520.09 M. S. A., and in view of the fact that the treasurer was authorized to handle the school district funds in his own way, I do not see that these facts can be said to be sufficient to charge the bank with acting in bad faith in following out the treasurer's instructions. For all the bank knew, the treasurer might have advanced that much money and more to the school district from his own funds and was now in the act of repaying himself."

It seems clear that under the uniform fiduciaries act, embodied in M. S. A. 520.09, no liability attached to the bank in the instant case. Section 520.09 provides:

"If a fiduciary makes a deposit in a bank to his personal credit * * * of checks payable to his principal and endorsed by him, if he is empowered to endorse such checks, or if he otherwise makes a deposit of funds held by him as fiduciary, the bank receiving such deposit is not bound to inquire whether the fiduciary is committing thereby a breach of his obligation as fiduciary; and the bank is authorized to pay the amount of the deposit or any part thereof upon the personal check of the fiduciary without being liable to the principal, unless the bank receives the deposit or pays the check *with actual knowledge that the fiduciary is committing a breach of his obligation as fiduciary in making such deposit or in drawing such check, or with knowledge of such facts that its action in receiving the deposit or paying the check amounts to bad faith.*" (Italics supplied.)

Under this provision to establish the bank's liability the evidence should show that, in receiving the deposit of school funds in Johnson's personal account and paying checks drawn against it, *the bank had knowledge that Johnson was committing a breach of his obligation* or knowledge of facts sufficient to establish that it must have acted in bad faith in carrying out his instructions. There is nothing whatever to support findings to such effect or to indicate even that the bank knew that Johnson was about to embezzle school funds or was otherwise committing a breach of his trust. He had been authorized by the district to sign checks and withdraw funds on his personal signature, and over the years he had thus deposited and withdrawn sums in excess of $100,000.

Separate and apart from § 520.09, we have held that a bank's knowledge, gained from the form of the check deposited by a trustee in his own personal account, that the checks thus deposited belonged to trustee's principal did not of itself impart to the bank notice of the trustee's wrongdoing. As stated in Rodgers v. Bankers Nat. Bank, 179 Minn. 197, 203, 229 N. W. 90, 92:

"* * * The bank ought not to be held responsible for the money's being checked out for illegal purposes unless it knows or in some special transaction has good reason to believe that a misappropria-

tion of the money is being made. * * * such depositing of the funds alone or for right purposes may be innocent and consistent with honesty and just dealing. Presumably the depositor so acts. In such a situation the bank should not be required to attribute an unlawful intention to him. * * * We cannot agree to the contention that when one deposits funds in his personal bank account that it must be regarded as equivalent to a declaration of intent to devote them to his personal ends.

"All authorities seem to agree that if the trustee cashed the check over the counter and misappropriated the money, liability of the bank would not follow. * * * If they may safely pay him the cash there is little reason to justify a refusal to give him a deposit credit. He may concededly cash the check at the drawee bank and deposit the cash in his own bank without imposing liability upon it for his breach of duty. To deposit the check for collection in his own bank is a shorter and more modern businesslike method of accomplishing the same end * * * and we see no good reason * * * for saying that that imposes a greater liability on the bank. * * *

"Another reason that assists us in reaching our conclusion is that this policy is embraced by the national conference of commissioners of uniform state laws in § 9 of the uniform fiduciaries act, which has been adopted in several states * * *. 9 Uniform Laws Annotated (Supp. 1928) 107."

Subsequent to this court's decision in Rodgers v. Bankers Nat. Bank, *supra*, § 9 of the uniform fiduciaries act became embodied in M. S. A. 520.09 above set forth.

It is clear that under the authorities cited, in the absence of knowledge on the part of the bank that Johnson wrongfully intended to divert to his own use money belonging to the district, or of other facts establishing its bad faith, no liability attached to it in this transaction.

The judgment appealed from is affirmed.

Affirmed.