502 P.2d 560

**BRASWELL MOTOR FREIGHT LINES, INC., a corporation, Plaintiff and Appellant,**

**v.**

**BANK OF SALT LAKE, a corporation, Defendant and Respondent.**

**No. 12784.**

Supreme Court of Utah.

Oct. 27, 1972.

Richards & Richards, Edward F. Richards, Gary A. Frank, Salt Lake City, Ronald R. Slaughter, Dallas, Tex., for plaintiff and appellant.

Carman E. Kipp, J. Anthony Eyre, Salt Lake City, for defendant and respondent.

ELLETT, Justice:

This is an appeal from a summary judgment in favor of the defendant.

The appellant began this action to recover from the respondent $574,031.32, which money was deposited in the defendant bank by one Kendall in a series of transactions and thereafter withdrawn from the account by the depositor. Kendall was unknown to the appellant but was well known to its assistant comptroller, an ex-convict by the name of Wertz, who engineered the scheme resulting in the loss complained of.

Kendall opened an account in defendant's bank under the name of Braswell Motor Freight Lines and filled out an account card showing himself as president to be the authorized signatory. Thereafter Wertz would draw checks payable to Braswell Motor Freight Lines on the vouchers of Braswell Motor Freight Lines, Inc., the appellant. He would then send them to Kendall, who would deposit them in the defendant bank and then draw checks upon the account.

Wertz and Kendall were able to perpetrate the fraud upon the appellant because it was the duty of the assistant comptroller to draw checks to be placed in another bank to cover payrolls of the appellant. By omitting the term "Inc." from the name of the plaintiff as payee, the confederates were able to collect a huge sum of money before their scheme was detected.

The appellant seeks to charge the bank for all funds drawn out of the account in question.

If Kendall was plaintiff's agent for the purpose of making the deposits, he would be a fiduciary and the bank would not be liable because of Section 22–1–9, U.C.A. 1953, which so far as material reads:

> If a fiduciary makes a deposit in a bank to his personal credit of checks drawn by him upon an account in his own name as fiduciary, . . . or if he otherwise makes a deposit of funds held by him as fiduciary, the bank receiving such deposit is not bound to inquire whether the fiduciary is committing thereby a breach of his obligation as fiduciary; and the bank is authorized to pay the amount of the deposit or any part thereof upon the personal check of the fiduciary without being liable to the principal, unless the bank receives the deposit or pays the check with actual knowledge that the fiduciary is committing a breach of his obligation as fiduciary in making such deposit or in drawing such check, or with knowledge of such facts that its action.

in receiving the deposit or paying the check amounts to bad faith.

It is difficult to see how Kendall could be an agent of plaintiff when he was a total stranger and had no interest whatsoever except to cheat and defraud.

If Kendall was an impostor, as he certainly was, then the bank is not liable because of Section 70A–3–405, U.C.A.1953 (Replacement Vol. 7B), which so far as material provides:

(1) An indorsement by any person in the name of a named payee is effective if

(a) an impostor . . . has induced the maker or drawer to issue the instrument to him or his confederate in the name of the payee; or

(b) a person signing as or on behalf of a maker or drawer intends the payee to have no interest in the instrument; or

(c) an agent or employee of the maker or drawer has supplied him with the name of the payee intending the latter to have no such interest.

Here, if Kendall induced the corporation to act through the assistant comptroller to issue to himself a check in the name of the payee, to wit, Braswell Motor Freight Lines, then under (a) above, the endorsement would be good and the defendant bank could safely pay the money to Kendall di-rectly upon endorsement or indirectly through deposit and withdrawal.

Under (b) above if the assistant comptroller intended that the named payee (assuming it be held that Braswell Motor Freight Lines is the same as Braswell Motor Freight Lines, Inc.) have no interest in the check, then the endorsement of the named payee is valid. There can be no question but what Wertz never intended Braswell Motor Freight Lines, Inc., to have any interest in the checks sent to Kendall.

If under (c) above the agent of the appellant, to wit, its assistant comptroller, supplied Kendall with the name of a payee, intending that the named payee have no interest in the funds, then the endorsement on the check would be valid and would relieve the defendant bank from liability. There can be no question that Wertz furnished the name of the payee to Kendall or that Wertz intended for the funds represented by the checks to go to himself and Kendall and not to the appellant herein.

There is no suggestion that the bank knew of any fraudulent scheme or acted in bad faith in its dealings with the depositor Kendall. As to the meaning of the term "bad faith" see Sugarhouse Finance Company v. Zions First National Bank, 21 Utah 2d 68, 440 P.2d 869 (1968).

When an agent of a drawer of a check supplies the name of a payee which he intends to have no interest therein, the

check is deemed to be payable to bearer, and an endorsement of the payee's name on the check is not forgery. Any loss arising from such transaction must fall upon the drawer who employed the dishonest signing agent.[1] It is thus obvious that no liability attaches to the defendant bank for accepting the deposits made by Kendall or in disbursing the funds thereof on the checks he wrote.

The judgment of the trial court is affirmed. Costs are awarded to the respondent.

CALLISTER, C. J., and HENRIOD, TUCKETT and CROCKETT, JJ., concur.

---

1. Bailey, The Law of Bank Checks (4th Ed.), § 1524, p. 523.