889 A.2d 1184

SPRINGFIELD TOWNSHIP and Joseph M. Gerber, Edward G. Bell, Jr., Joseph P. Phelps, Jr., Roy D. Hanshaw, James R. Selsor, Michael W. Cassidy and Gary E. Yeager, Donald E. Berger and Thomas Morton, Trustees for the Springfield Pension Plans, Appellees

v.

MELLON PSFS BANK, Appellant.

Supreme Court of Pennsylvania.

Argued April 14, 2004.

Resubmitted June 17, 2005.

Decided Dec. 30, 2005.

2

Jonathan J. Bart, Daniel S. Bernheim, Philadelphia, for Mellon PSFS Bank.

Michael D. Kristofco, Blue Bell, for Springfield Tp., et al.

Before CAPPY, C.J., and CASTILLE, NIGRO, NEWMAN, SAYLOR, EAKIN and BAER, JJ.

## *OPINION*

JUSTICE EAKIN.

The sole issue before this Court is whether a bank must have actual knowledge that it is dealing with a fiduciary at the time of a transaction in order for the bank to be entitled to the protections of § 9 of the Uniform Fiduciaries Act (UFA).[1] We hold that a bank need not have actual knowledge it is dealing with a fiduciary in order to be protected under § 9 of the UFA, and therefore reverse the order of the Superior Court.

Appellee, Springfield Township, retained Robert J. Kuss through his firm, Robert J. Kuss & Associates, Inc., to manage and administer pension plans for the Township's employees. As a fiduciary of the Township, Kuss had the authority to open accounts for the Township, to sign and endorse checks payable to the Township's pension plans, and to transfer funds for the Township. Kuss misappropriated eight checks payable to the Township's Pension Plan by depositing the checks in an escrow account established under the name "Robert J. Kuss & Associates, Inc.," which Kuss maintained through appellant, Mellon PSFS Bank. The checks were issued between June 7, 1989 and March 23, 1990, and were payable to "The Board of Commissioners TTEE Springfield Township PEN PLS." Kuss endorsed seven of the eight checks: "For Deposit Only

1. 7 P.S. § 6351 *et seq.*

4

2–196–061." He endorsed the eighth check: "For Deposit Only 2–196–061 On Account Springfield Twp Pen Plan."

In April, 1993, after discovering Kuss's misappropriation, the Township commenced an action against Mellon by filing a writ of summons in the Court of Common Pleas of Montgomery County. In September, 1995, the Township filed a complaint, in which it sought to recover the amount of the eight checks Mellon credited to Kuss's account. In its complaint, the Township included claims for statutory conversion, negligence, and "money had and received."[2] The Township withdrew its negligence claim prior to trial.

Throughout these proceedings, including a motion for summary judgment, Mellon asserted the affirmative defense that the UFA barred the Township's claims, regardless of whether Mellon had knowledge of Kuss's fiduciary status. Mellon specifically argued that *Jones v. Van Norman*, 513 Pa. 572, 522 A.2d 503 (1987), stands for the proposition that the UFA shields a bank from liability to a principal when an authorized fiduciary deposits and misappropriates the principal's funds, as long as the fiduciary was "in fact" empowered to endorse the checks at the time of the deposit. According to Mellon, the protections of the UFA were available regardless of whether bank personnel had actual knowledge they were dealing with a fiduciary at the time of the transactions.

The Township asserted *Jones* did not control. Instead, the Township averred the trial court was bound by the Superior Court's decision in *Levy v. First Pennsylvania Bank, N.A.*, 338 Pa.Super. 73, 487 A.2d 857 (1985), which held that in order for a bank to benefit from the protections of the UFA, the bank was required to know at the time of the transaction that it was dealing with a fiduciary. The Township argued that if the jury determined Mellon did not know it was dealing with a

2. A claim for "money had and received" is a common law action "by which the plaintiff could recover money paid to the defendant, the money usually being recoverable because (1) the money had been paid by mistake or under compulsion, or (2) the consideration was insufficient." Black's Law Dictionary, at 29 (7th edition).

fiduciary when Kuss deposited the eight checks into his Mellon account, then the UFA did not protect Mellon.

The trial court was persuaded by the Township's position and specifically instructed the jury that in order for the UFA to apply in this case, "[f]irst, Mellon Bank must prove [by a preponderance of the evidence] that it knew that it was dealing with a fiduciary for Springfield when it accepted the eight checks at issue in this case for deposit." N.T., 8/7/01, at 102 (R.R., at 2131). The jury found that, as to all eight checks, Mellon personnel did not have actual knowledge that Kuss was a fiduciary for the Township's pension plans when they accepted the checks for deposit. The jury also determined, with respect to the seven checks endorsed with "For Deposit Only 2–196–061," the Township established claims for conversion and for "money had and received." Therefore, the jury rendered a verdict in favor of the Township in the amount of the seven checks.

Mellon filed a motion for post-trial relief, in which it argued the trial court erred in "instructing the jury that in order for the [UFA] to bar [the Township's] claims [ ], Mellon had to have actual knowledge that Robert J. Kuss was a fiduciary." Mellon's Motion for Post–Trial Relief, at 2. After argument, the trial court denied Mellon's motion and entered final judgment in favor of the Township in the amount of $504,944.43. Mellon filed timely notice of appeal.

In its appeal to the Superior Court, Mellon renewed its argument that § 9 of the UFA, 7 P.S. § 6393, shielded the bank from liability and this Court's decision in *Jones* overruled the Superior Court's holding in *Levy*. The Superior Court was unpersuaded and, relying on *Levy*, held that because the jury made a factual determination that Mellon's employees did not know they were dealing with a fiduciary when accepting Kuss's transactions, the trial court properly concluded the UFA did not apply. Accordingly, the Superior Court affirmed the judgment. Mellon petitioned this Court for allowance of appeal, which we granted, limited to the issue of whether a bank must have actual knowledge it is dealing

with a fiduciary before it may invoke the protections of § 9 of the UFA.[3]

Pennsylvania enacted the UFA in 1923.[4] The Act "was designed to facilitate banking transactions by relieving the depositary of the responsibility of seeing that an authorized fiduciary uses entrusted funds for proper purposes." *Lehigh Presbytery v. Merchants Bancorp, Inc.*, 410 Pa.Super. 557, 600 A.2d 593, 595 (1991) (citing *Robinson Protective Alarm Co. v. Bolger & Picker*, 512 Pa. 116, 516 A.2d 299, 304 (1986)). Various transactions are included in the UFA; this appeal deals only with § 9, which states, in pertinent part:

> If a fiduciary makes a deposit in a bank to his personal credit . . . of checks payable to his principal and indorsed by him, *if he is empowered to indorse such checks* . . . the bank receiving such deposit is not bound to inquire whether the fiduciary is committing thereby a breach of his obligation as fiduciary, and the bank is authorized to pay the amount of the deposit, or any part thereof, upon the personal check of the fiduciary, without being liable to the principal, unless the bank receives the deposit or pays the check with actual knowledge that the fiduciary is committing a breach of his obligation as fiduciary in making such deposit or in drawing such check or with knowledge of such facts that its action in receiving the deposit or paying the check amounts to bad faith.

7 P.S. § 6393 (emphasis added).

When interpreting a statute, we must abide by the rules of statutory construction. It is a basic tenet of statutory interpretation that, "[w]hen the words of a statute are clear and free from all ambiguity, the letter of it is not to be

---

3. The issue we address in this appeal raises a question of law. Therefore, our standard of review is *de novo*, and to the extent necessary, the scope of review is plenary. *See Buffalo Township v. Jones*, 571 Pa. 637, 813 A.2d 659, 663 n. 4 (2002).

4. The UFA was approved in 1922 by the National Conference of Commissioners on Uniform State Laws and the American Bar Association. It has been adopted into law in 24 states, the District of Columbia, and the U.S. Virgin Islands. For list, *see* Uniform Fiduciaries Act, Table of Jurisdictions, printed immediately preceding 7 P.S. § 6351.

disregarded under the pretext of pursuing its spirit." 1 Pa.C.S. § 1921(b). The plain language of § 9 clearly states that if a fiduciary is empowered to endorse checks and deposit them into his personal bank account, a bank is not required to investigate the purpose of the deposit any further. Over time, however, certain ambiguities have been read into this statute, which we now dispel.

In *Jones*, Mr. Jones had authorized Mrs. Van Norman to endorse checks payable to him, which she ultimately deposited into her personal checking account without Mr. Jones's permission. We held that, pursuant to § 3–419 of the Uniform Commercial Code (UCC), 13 Pa.C.S. § 3419, the bank where Mrs. Van Norman deposited the checks could be held responsible for conversion only if the signatures on those checks were unauthorized or forged endorsements. *Jones*, at 509. In a footnote, we noted the bank's counsel had failed to argue that § 9 of the UFA barred liability on the part of the bank. *Id.*, at 508 n. 6. In that footnote, this Court explained the protections afforded a bank pursuant to the UFA and summarized the application of § 9 in two prior cases, *Bacher v. City National Bank of Philadelphia*, 347 Pa. 80, 31 A.2d 725 (1943), and *Strong v. City National Bank of Philadelphia*, 355 Pa. 390, 50 A.2d 323 (1947):

> In *Bacher*, an administratrix of a decedent's estate gave her attorney the authorization "to collect any and all monies due the said estate and to endorse any and all checks payable to ... administratrix of the said estate, and to deposit the funds so collected on his attorney's account." The attorney received the cash and deposited them in his personal account. He used the funds by writing personal checks on his account. We said there that: "[U]nder Section 9 of the [UFA], it is provided that, unless the bank has actual knowledge that the fiduciary is committing a breach of his obligation as fiduciary, it is justified, if the fiduciary is empowered to endorse checks payable to his principal, in accepting them as a deposit to his personal credit." The summary judgment entered by the trial court in favor of

administratrix Bacher was reversed. The case went back to the lower court for trial.

*Jones,* at 508 n. 6 (citations omitted in original). On remand in *Bacher,* the trial court held the UFA did not protect the bank because it had no knowledge of the attorney's authority to endorse the checks. *Id.* The case was re-captioned as *Strong,* and appealed to this Court once again. We reversed, holding:

> The bank, as provided in section 9 of the [UFA], was authorized to pay the amount of the deposits on [the attorney's] personal checks unless it had actual knowledge of the limitations of his authority in that regard, but its knowledge or lack of knowledge as to his right to [e]ndorse the checks was wholly immaterial. The condition prescribed by the [UFA] as necessary to relieve the bank from liability is that the fiduciary must *in fact* have been empowered to [e]ndorse the checks, not that the bank must have known that he had such authority.

*Strong,* at 324–25 (emphasis in original).

The divergence in interpreting § 9 arose when the Superior Court published its opinion in *Levy, supra,* decided after *Bacher* and *Strong* but before *Jones.* In *Levy,* a law firm was hired to handle the sale of the Levys' business, Novelty Printing. The Levys instructed a partner at the firm to open an account at a local brokerage firm on their behalf. When the treasury bills purchased by the broker matured, the partner was to deposit the checks into the Levys' accounts at two banks. The partner impermissibly deposited three checks from the broker into his personal account instead of into the Levys' accounts; he later misappropriated the funds. The Levys sued the partner's bank for conversion. A jury found in favor of the Levys, awarding them the amount of the checks plus interest.

On appeal, the Superior Court held that the UFA did not shield the bank from liability in *Levy* because the partner did not have the power to endorse the checks as he did. *Levy,* at 861. The court stated that "[§ 9 of the UFA] relieves banks of liability only when the fiduciary has the power to endorse."

*Id.* In a footnote, the *Levy* court distinguished that case from *Bacher* and *Strong*, stating the endorsements in those cases indicated the depositor was a fiduciary, whereas in *Levy*, the checks were endorsed with the names of the payees and the partner's bank account number. *Id.*, at 861 n. 13. Thus, the court determined *Bacher* and *Strong* did not apply to *Levy*, especially in light of the UFA's Prefatory Note, which states, "The Act covers situations which arise where one person deals with another person whom he knows to be a fiduciary." *Levy*, at 862 n. 13 (quoting 7A Uniform Laws Annotated 127 (West 1978)).

In the instant case, the Superior Court relied on *Levy* when it determined § 9 did not protect Mellon because its personnel did not know Kuss was the Township's fiduciary; thus, it held the UFA is not applicable. The court rejected Mellon's argument that *Jones* overruled *Levy* because *Jones* did not involve the UFA, and the discussion of § 9 in the footnote of that case was *obiter dictum*.

Mellon argues that our decision in *Jones* explains the object of § 9 of the UFA and controls the outcome of this case. Specifically, Mellon contends that in *Jones*, this Court affirmatively cited to our decisions in *Bacher* and *Strong* for the proposition that where a fiduciary was empowered to endorse checks for the principal when the fiduciary deposited the principal's funds into a bank, the UFA shields the bank from liability to the principal if the authorized fiduciary subsequently misappropriates the principal's funds. Furthermore, Mellon contends that *Jones* does not require a bank to have actual knowledge at the time of a transaction that it is dealing with a fiduciary for the UFA's protections to apply. Based on this reading of *Jones*, Mellon asserts its knowledge of Kuss's status as a fiduciary of the Township is wholly immaterial and, because the Township had authorized Kuss to endorse all checks payable to the Township's pension plan, including the eight in question, the UFA shields Mellon from liability in this case.[5] Mellon asserts this Court has already properly decided

5. Mellon also argues that under its reading of *Jones*, the UFA and the UCC are consistent. According to Mellon, the UCC merely requires a

this issue in *Jones, Bacher,* and *Strong.* Accordingly, Mellon advocates overruling *Levy* and reversing the Superior Court's decision below.

The Township asserts Mellon's reliance on *Jones* is erroneous. The Township argues the Superior Court correctly determined the discussion of the UFA in footnote 6 of *Jones* is *dicta* because *Jones* did not involve a claim under the UFA, and therefore, it cannot stand as this Court's authoritative interpretation of § 9. The Township also contends that in any event, footnote 6 of *Jones* merely discussed this Court's previous decisions in *Bacher* and *Strong.* According to the Township, in *Bacher* and *Strong,* we found the UFA did not require a bank to inquire into the extent of a fiduciary's authority as fiduciary at the time of a transaction. The Township avers that in those cases, we did not determine that a bank may invoke the protections of the UFA without knowing the status of a fiduciary as fiduciary. According to the Township, Mellon has created a false conflict between our holdings in *Jones/Bacher/Strong,* which the Township argues dealt with whether a bank needs to inquire into the extent of a fiduciary's authority, and the Superior Court's holding in *Levy,* which concluded a bank must know of a fiduciary's status as a fiduciary in order to benefit from the protections of the UFA.

The Township further argues that the protections provided in § 9 can only arise when a bank knows that it is dealing with a fiduciary. According to the Township, § 9 of the UFA was designed solely to relieve banks of the duty to inquire into whether fiduciaries are committing breaches of their obligations as fiduciaries. The Township states that "[i]f [a] bank had no idea that it was dealing with a fiduciary, [then] it would have no duty to inquire because it would not know that there was anything about which to inquire." Township's Brief, at 9. The Township asserts that unless a bank knows it is dealing with a fiduciary, § 9 is meaningless.

fiduciary to have authority to endorse checks in order for the principal to be responsible for the acts of the fiduciary. Mellon contends that the UCC does not require banks to know of this authority in order for principals to assume this responsibility.

■ We cannot endorse this proposition. The plain language of the statute states that if a fiduciary has the power to do that which the bank allows him to do, *i.e.*, endorse and deposit checks "in a bank to his personal credit"—or in this case to his business account—the bank is not liable regardless of whether it knew of his fiduciary status.[6] The statute does not list knowledge of a fiduciary's status as a requisite to the bank's insulation from liability; that element, that prerequisite to protection, simply does not exist in the statute. "Only if a statute is unclear may a court embark on the task of ascertaining the intent of the legislature by reviewing the necessity of the act, the object to be attained, circumstances under which it was enacted and the mischief to be remedied." *Coretsky v. Board of Commissioners of Butler Township*, 520 Pa. 513, 555 A.2d 72, 74 (1989) (citation omitted). This is not a case of ambiguity, where we must search for the legislative intent behind the words of the statute. This is a case where the Court is asked to add an element to the statute; this we cannot do.[7]

■ Kuss was a fiduciary of the Township, and had the authority to open accounts for the Township, to sign and endorse checks payable to the Township's pension plans, and to transfer funds for the Township. In general, when Kuss deposited the Township's checks, endorsed by him, he did nothing improper.[8] The Township trusted Kuss and granted him power to administer its pension funds. It was not until he

6. The business account into which Kuss deposited the checks was an escrow account; thus, on some level the bank had to know he was a fiduciary, the verdict notwithstanding.

7. The dissent would adopt the Wisconsin Court of Appeals interpretation of § 9 in *Larson v. Kleist Builders, Ltd.*, 203 Wis.2d 341, 553 N.W.2d 281 (Ct.App.1996). That case is factually distinguishable; although the court did interpret § 9 of the UFA, it ultimately held that the person who misappropriated the funds in question was not a fiduciary. Thus, the statute was found to be inapplicable, and the court's statement that a bank is protected when it knows the presenter of a check is a fiduciary appears to be dicta.

8. The jury was not asked by specific interrogatory whether Kuss actually had the authority to deposit the checks into his business account; the statute does not require proof the fiduciary was empowered to do so.

**12**

used the already-deposited funds inappropriately that the Township cried foul and sought to blame the bank for not inquiring into his authority before deposit. Certainly, when the bank did not inquire into his authority to deposit pension fund checks into his business account, it was taking the risk he did not have the authority to do so. However, the bank cannot be held liable simply because it did not ask if Kuss had the power to deposit those checks; had the bank inquired, it would have found he *did* have the power.[9]

The Township argues the history behind the enactment of the UFA supports its contention that the UFA presumes a bank must know it is dealing with a fiduciary to be entitled to the protections of the UFA.[10] Most significantly, the Town-

**9.** The Dissent adopts the Township's position that the purpose and intent of § 9 and the UFA was not "to reward serendipity." Dissent Op., 586 Pa. at 19, 889 A.2d at 1196 (quoting Township's Brief, at 8). Serendipity or not, Kuss was, in fact, the Township's fiduciary; the bank has been in no way "rewarded." The bank did not take the money here, Kuss did. The bank allowed Kuss to do exactly what Kuss was authorized to do, yet when Kuss later stole the money, the dissent would have the bank repay his debt to the Township; not having to repay money the bank did not help him take is not a "reward."

**10.** In the 21st century, one may have an entirely electronic relationship with his bank. Banking procedures have changed since the UFA was drafted in 1922; today, it is no longer necessary to go to the bank to deposit checks face-to-face with a teller who knows you by name. Through Automatic Teller Machines and the internet, withdrawals and deposits can be made and bank accounts can be managed without ever setting foot inside a brick-and-mortar establishment. *See* http://www.ftc.gov/bcp/conline/pubs/credit/elbank.htm ("Electronic banking . . . uses computer and electronic technology as a substitute for checks and other paper transactions.").

In this regard, the General Assembly has adopted the Uniform Electronic Transactions Act, 73 P.S. § 2260.101 *et seq.*, in order to "enhance and promote the reliability of electronic commerce," because "electronic commerce is expanding rapidly and is an engine for economic growth. . . ." *Id.*, § 2260.102. There are also provisions of the Banking Code which govern electronic funds transfer systems. *See* 7 P.S. §§ 6121, 6122. The General Assembly has also adopted that portion of the UCC dealing with electronic funds transfers. *See* 13 Pa.C.S. § 4A101 *et seq.* Congress has enacted the Electronic Funds Transfer Act, 15 U.S.C. § 1693 *et seq.*, finding that "the use of electronic systems to transfer funds provides the potential for substantial benefits to consumers." *Id.*, § 1693(a). This is but a sampling of federal and state statutes dealing with the utilization of computer and

ship cites *Levy's* reliance on the UFA's Prefatory Note, in which, as noted above, the drafters of the UFA stated that "[t]he Act covers situations which arise where one person deals with another person whom he *knows to be a fiduciary.*" Township's Brief, at 11 (citing *Levy,* at 861 n. 13) (emphasis supplied).

Although the language of the Prefatory Note evinces intent that the UFA applies when a person is known to be a fiduciary, that note was not adopted in Pennsylvania. The failure to adopt that preface may or may not signal a repudiation of its terms by our legislature, but it certainly cannot be taken as an endorsement of the notion. This unpublished language clearly does not add an element to the plain language of § 9, and while it may signify the intent of the drafters of the UFA,[11] those drafters are not the General Assembly of Pennsylvania, whose intent controls. *See* 1 Pa. C.S. § 1921. And even if the UFA was designed to allow a bank to dispense with formalities when it knows it is dealing with a fiduciary, this does not equate to the opposite: where a bank does not know it is dealing with a fiduciary, it has no defense under the UFA. Section 9 requires only that the fiduciary actually was "empowered to indorse such checks." *See* 7 P.S. § 6393; *see also Strong,* at 324–25 (under UFA § 9, "[t]he condition prescribed by the Act as necessary to relieve the bank from liability is that the fiduciary must *in fact* have

other technology to facilitate banking and commercial transactions. Personal inquiry by a teller before accepting a deposit is less significant than a generation ago, reinforcing our conclusion that actual authority is more important than perceived authority. In an age where pre-deposit perceptions of authority do not exist, this appears the better rule.

11. This Court has cited to the Prefatory Notes to Uniform Acts for persuasive authority, but we have never used one to form the primary basis for the interpretation of an unambiguous statutory provision. In addition, the General Assembly has published the prefatory language of certain uniform laws (*e.g.,* in Title 68 of Pennsylvania Consolidated Statutes, immediately preceding the Uniform Planned Community Act, 68 Pa.C.S. § 5101 *et seq.,* the Uniform Law Comment has been published); it chose not to do so here. If the prefatory language speaks to the element of knowledge, the only place actual knowledge appears in the Uniform Act, rejection of that language must include rejection of that element.

been empowered to indorse the checks, not that the bank must have known he had such authority.") (emphasis in original); *Bacher* (holding when fiduciary had power to endorse checks, bank is relieved of liability for fiduciary's misappropriation of funds).

The UFA is a uniform act and, as such, we endeavor to interpret it consistently with those other states that have enacted it. 1 Pa.C.S. § 1927 ("Statutes uniform with those of other states shall be interpreted and construed to effect their general purpose to make uniform laws of those states which enact them."); 7 P.S. § 6403 ("Th[e UFA] shall be interpreted and construed as to effectuate its general purpose to make uniform the law of those States which enact it."). Our interpretation of § 9 of the UFA is consistent with the interpretation given by those jurisdictions that have applied the provision.[12] Many of the cases from other jurisdictions cite the Prefatory Note's language; however, none of those cases deal with the issue of whether a bank must know it is dealing with a fiduciary in order to be protected by § 9–nor do they rely on that language to form the basis for interpretation of § 9. *See Heffner v. Cahaba Bank and Trust Co.*, 523 So.2d 113 (Ala. 1988) (grant of summary judgment affirmed where no evidence of bad faith under UFA § 9, Ala.Code § 19–1–9 was shown on part of bank); *Arvada Hardwood Floor Co. v. James*, 638 P.2d 828 (Colo.Ct.App.1981) (UFA § 9, Colo.Rev. Stat. § 15–1–11 not applicable because employee who deposit-

---

**12.** One federal district court case, factually similar to the instant case, is in conflict with our decision. In *Terre Haute Industries, Inc. v. Pawlik*, 765 F.Supp. 925 (N.D.Ill.1991), the United States District Court for the Northern District of Illinois refused to grant summary judgment in favor of First National Bank of Dolton based on the bank's claim that the UFA insulated it from liability. The bank allowed the principal's employee to deposit into his personal account checks written from the principal to the bank. The court based its denial on the fact that the bank, assuming the employee was the principal's fiduciary, did not know the employee was a fiduciary. The district court came to this interpretation of the UFA on its own, relying on cases which are distinguishable because knowledge of the agent's fiduciary status was not at issue there. *See id.*, at 929–30 (distinguishing *St. Stephen's Church v. Seaway Nat'l Bank*, 38 Ill.App.3d 1021, 350 N.E.2d 128 (1976) and *Johnson v. Citizens Nat'l Bank of Decatur*, 30 Ill.App.3d 1066, 334 N.E.2d 295 (1975)).

ed checks into his personal account was not fiduciary and was not empowered to endorse checks); *In the Matter of Bishop, Baldwin, Rewald, Dillingham, & Wong, Inc.,* 69 Haw. 523, 751 P.2d 77, 81 (1988) ("Where evidence is lacking that a bank received checks drawn by a fiduciary as his personal creditor, or that it transferred the funds received with actual knowledge of the fiduciary's breach of his obligation as fiduciary, or that the transfers were made in bad faith, [Haw.Rev.Stat.] §§ 556–4 [UFA § 5] and 556–8 [UFA § 9] do not render the bank liable to the principal."); *Coeur d'Alene Mining Co. v. First Nat'l Bank of North Idaho,* 118 Idaho 812, 800 P.2d 1026 (1990) (if fiduciary had authority to endorse checks in blank, even knowledge he deposited them in his own account would not make bank liable under Idaho Code § 68–309 (UFA § 9), absent showing bank acted in bad faith); *Continental Casualty Co., Inc. v. American Nat. Bank and Trust Co.,* 329 Ill.App.3d 686, 263 Ill.Dec. 592, 768 N.E.2d 352 (2002) (summary judgment inappropriate where facts sufficient to show bank engaged in bad faith pursuant to 760 ILCS 65/9 (UFA § 9) because it was commercially unreasonable for it to maintain ATM deposit procedures which allowed unauthorized fiduciary to deposit checks payable to principal's tax account into fiduciary's personal account); *UNR–Rohn, Inc. v. Summit Bank of Clinton County,* 687 N.E.2d 235 (Ind.Ct.App. 1997) (summary judgment inappropriate where genuine issue of material fact remains-whether bank acted in good faith when dealing with fiduciary pursuant to Ind.Code § 30–2–4–9 (UFA § 9)); *Western Surety Co. v. Farmers & Merchants State Bank of Breckenridge,* 241 Minn. 381, 63 N.W.2d 377 (1954) (where fiduciary had authority to endorse, in absence of knowledge on part of bank fiduciary wrongfully intended to divert to his own use money belonging to principal, or of other facts establishing bad faith, no liability attached pursuant to Minn.Stat. § 520.09 (UFA § 9)); *Southern Agency Co., Inc. v. Hampton Bank of St. Louis,* 452 S.W.2d 100 (Mo.1970) (if fiduciary has express authority to endorse for any purpose, and if bank does not know of limits on that power, actual notice of misappropriation or conduct amounting to bank's bad faith required for principal to recover under UFA); *Chouteau*

*Auto Mart, Inc. v. First Bank of Missouri,* 2000 WL 1807918, 2000 Mo.App. LEXIS 1863 (2000) (legislative intent of Mo. Rev.Stat. § 456.10 (UFA § 9) to hold depository bank liable only where it receives deposit or pays check with actual knowledge fiduciary is breaching obligation to principal, or with knowledge its action amounts to bad faith); *Metro Trust Co. v. Northwestern Savings & Loan Assoc.,* 654 S.W.2d 631 (Mo.Ct.App.1983) (bank knew fiduciary was breaching her duty when she pledged trust account to secure personal loan and withdrew funds from trust account to pay loan, @so bank is afforded no protection from UFA); *Guild v. First Nat'l Bank of Nevada,* 92 Nev. 478, 553 P.2d 955 (1976) (bank becomes liable under Nev.Rev.Stat. 162.100 (UFA § 9) when it receives deposit by fiduciary with actual knowledge fiduciary is breaching obligation or with knowledge of such facts that bank's action in receiving deposit amounts to bad faith); *Leeds v. Chase Manhattan Bank,* 331 N.J.Super. 416, 752 A.2d 332 (App.Div.2000) (where attorney forged endorsement, N.J. Stat. Ann. § 3B:14–58a (UFA § 9) does not shield bank from liability for conversion under UCC); *Transport Trucking Co. v. First Nat'l Bank in Albuquerque,* 61 N.M. 320, 300 P.2d 476 (1956) (trial court correct in dismissing case based on 1953 N.M. Stat. Ann. § 46–1–9 (UFA § 9) where fiduciary was empowered to endorse checks and record failed to show bank acted dishonestly or received deposits with actual knowledge fiduciary was committing breach of his obligation or that bank had knowledge of such facts that its action amounted to bad faith); *K.T. McConnico, Jr., v. Third Nat'l Bank in Nashville,* 499 S.W.2d 874 (Tenn.1973) (bank did not know depositor was fiduciary, but because fiduciary had authority to endorse and deposit into personal account and bank had no actual knowledge of breach and did not commit bad faith, bank not liable for fiduciary's misappropriations); *Zions First Nat'l Bank v. Clark Clinic Corp.,* 762 P.2d 1090 (Utah 1988) (summary judgment inappropriate under UFA where genuine issues of material fact exist concerning fiduciary's authority to act on behalf of principal); *Research–Planning, Inc. v. Bank of Utah,* 690 P.2d 1130, 1133 (Utah 1984) (holding bank not liable under UFA because: "The Bank neither acted with actual

knowledge that [depositor] acted as a fiduciary in depositing the $260,000 or in bad faith, nor can it reasonably be charged with (@having ignored any knowledge that indicated that the ... check constituted fiduciary funds. It did not have in its possession 'facts clearly suggesting fiduciary misconduct.' "); *Braswell Motor Freight Lines, Inc. v. Bank of Salt Lake*, 28 Utah 2d 347, 502 P.2d 560 (1972) (Utah Code Ann. § 22–1–9 (1953) (UFA § 9) does not shield bank from liability where depositor of checks was not fiduciary).

We hold that a bank need not have actual knowledge of a person's fiduciary status in order to invoke the protections of § 9 of the UFA. As such, the decision of the Superior Court is reversed, and we overrule that portion of the Superior Court's decision in *Levy* dealing with the UFA.

Order reversed. Jurisdiction relinquished.

Justice CASTILLE, Justice NEWMAN and Justice SAYLOR join the opinion.

Chief Justice CAPPY files a dissenting opinion in which Justices NIGRO and BAER join.

## DISSENTING OPINION

CHIEF JUSTICE CAPPY.

I respectfully dissent. In my view, the Legislature intended that a bank have actual knowledge that it is dealing with a fiduciary in order for the bank to be entitled to the protections of Section 9 of the Uniform Fiduciaries Act ("UFA"), 7 P.S. § 6393. Thus, I would affirm the order of the Superior Court.

According to the Majority, "[t]he plain language of [Section 9 of the UFA] states that if a fiduciary has the power to do that which the bank allows him to do, *i.e.,* endorse and deposit checks 'in a bank to his personal credit' ... the bank is not liable *regardless of whether it knew of his fiduciary status.*" Majority Opinion 586 Pa. at 11, 889 A.2d at 1190 (emphasis added). If, indeed, the plain language of Section 9 of the UFA stated as such, the Majority obviously would be correct in

concluding that a bank need not have actual knowledge that it is dealing with a fiduciary in order to enjoy the protections of Section 9 of the UFA. Section 9 of the UFA, however, is not nearly so lucid. Section 9 states as follows:

> **Deposit in fiduciary's personal account.** If a fiduciary makes a deposit in a bank to his personal credit of checks drawn by him upon an account in his own name as fiduciary; or of checks payable to him as fiduciary; or of checks drawn by him upon an account in the name of his principal, if he is empowered to draw checks thereon; or of checks payable to his principal and indorsed by him, if he is empowered to indorse such checks; or if he otherwise makes a deposit of funds held by him as fiduciary,—the bank receiving such deposit is not bound to inquire whether the fiduciary is committing thereby a breach of his obligation as fiduciary, and the bank is authorized to pay the amount of the deposit, or any part thereof, upon the personal check of the fiduciary, without being liable to the principal, unless the bank receives the deposit or pays the check with actual knowledge that the fiduciary is committing a breach of his obligation as fiduciary in making such deposit or in drawing such check or with knowledge of such facts that its action in receiving the deposit or paying the check amounts to bad faith.

7 P.S. § 6393. Based on the above, it is clear that Section 9 of the UFA does not contain "plain language" stating that a bank is protected from liability when dealing with a fiduciary "*regardless of whether it knew of [the] fiduciary['s] status.*" [1]

1.  If a plain language approach were to apply, then I would be inclined to follow the rationale employed in *Larson v. Kleist Builders, Ltd.*, 203 Wis.2d 341, 553 N.W.2d 281 (Ct.App.1996). In *Larson*, the Wisconsin Court of Appeals was called upon to determine whether a bank is protected from liability under its version of Section 9 of the UFA, Wis. Stat. 112.01(10). In doing so, the court found that Section 9 of the UFA clearly and unambiguously requires that in order for the statute to apply and protect a bank, the person that misappropriated the funds must have been, in fact, a fiduciary of the company. The court specifically stated the following, with which I concur:

> [Section 9 of UFA] applies when a bank is aware that it is dealing with a fiduciary. Indeed, *the statute presumes a bank's knowledge of the presenter as a fiduciary* and, contrary to [the defendant-bank's]

Section 9 of the UFA is not explicit regarding the issue at hand, and therefore, the Court is to ascertain the intent of the Legislature by considering, among other matters, the factors delineated in Section 1921(c) of the Statutory Construction Act. 1 Pa.C.S. § 1921(c) ("When the words of the statute are not explicit, the intention of the General Assembly may be ascertained by considering, among other matters:" the factors enumerated (1)-(8).).[2]

While Section 9 of the UFA relieves a bank, acting honestly and in good faith, of much of its common law duty to inquire into whether a fiduciary will use entrusted funds for proper purposes, the statute's protections are not without limitation. The drafters of the UFA did not craft the Act in a manner which anticipates that a bank should benefit from the protections of the UFA when the bank is completely unaware of a person's status as fiduciary. As the Township aptly points out, "[t]he objective of Section 9 of the UFA, in particular, and the purpose and intent of the UFA, in general, establish that it was not enacted to reward serendipity." Township's Brief at 8.

In addition, Section 9 of the UFA provides two explicit ways a bank can forfeit the protections of the UFA: if the bank had actual knowledge that the fiduciary was breaching his or her obligations as fiduciary or if the bank's actions in dealing with

argument, the "actual knowledge" and "bad faith" components of the statute relate to the known fiduciary's conduct with regard to the check presented.

2. I also respectfully disagree with the Majority's reliance on "21st century" banking practices and modern banking legislation as support for its "plain language" resolution of the issue in this case. *See* Majority Opinion 586 Pa. at 11–12 n. 8, 889 A.2d at 1191 n. 8. First, the Commissioners on Uniform State Laws drafted the UFA in 1922, and this Commonwealth adopted the UFA in 1923; therefore, "21st century" banking practices and legislative schemes have no bearing on the intent of the Legislature in adopting the UFA. Additionally, as to the issue raised in this case, the impact of the method by which a fiduciary deposits or withdraws money into and from a bank is irrelevant. Regardless of whether a fiduciary deposits or withdraws funds in person or via the internet or automatic teller, the question underlying this matter remains: if the fiduciary misappropriates the funds, does Section 9 of the UFA protect the bank from liability if the bank was unaware of the fiduciary's status as fiduciary?

the fiduciary amount to bad faith. 7 P.S. § 6393. Simply stated, a bank could not act in bad faith or have actual knowledge that the fiduciary was breaching his or her obligations to a principal if the bank never knew the fiduciary was, in fact, a fiduciary. Thus, a bank's knowledge that it is dealing with a fiduciary is necessary in order for the statute to have meaning. Under the Majority's interpretation of Section 9, however, a bank has more incentive to remain ignorant of any relationship between a principal and a fiduciary than it does to learn of such a relationship.

Moreover, the drafters of the UFA specifically stated in the first line of the Act's Prefatory Note that "[t]he Act covers situations which arise where one person deals with another person *whom he knows to be a fiduciary.*" Uniform Laws Annotated, Volume 7A, Pt. 1 (West 2002) (emphasis added). While a Prefatory Note does not control the disposition of the issue before the Court, it certainly demonstrates the drafter's intent, which is particularly relevant here since our Legislature adopted Section 9 of the UFA in the exact same substantive form as the uniform law drafted by the Commissioners on Uniform State Laws, and the emphasized language above clearly indicates that the drafters of the UFA intended for the Act to protect banks in situations where banks know that they are dealing with fiduciaries.

I also disagree with the Majority's uniformity analysis. *See* Majority Opinion at 12–14. According to the Majority, its interpretation of Section 9 of the UFA is consistent with the interpretation given by those jurisdictions that have applied the statute, save a federal court's decision in *Terre Haute Industries, Inc. v. Pawlik,* 765 F.Supp. 925 (N.D.Ill.1991). I, however, respectfully submit that the cases cited by the Majority do not find that a bank is entitled to the protections of the UFA when it is unaware of a person's status as fiduciary. Rather, these cases merely hold that a bank forfeits the protections of the UFA if the purported fiduciary was not, in fact, a fiduciary of the principal and if, in dealing with a fiduciary, the defendant-bank acted in bad faith or with actual knowledge that the fiduciary was misappropriating the princi-

pal's funds. These cases are aligned with our caselaw in this area, *see, e.g., Davis v. Pennsylvania Co. for Insurances on Lives and Granting Annuities,* 337 Pa. 456, 12 A.2d 66 (1940), and are entirely consistent with my position.

Moreover, the cases from our sister states, which the Majority summarily dismisses, squarely demonstrate that all of these jurisdictions recognize the legal principal that the protections of the UFA are not triggered unless a bank knows that it is dealing with a fiduciary. *E.g., Master Chemical Corporation v. Inkrott,* 55 Ohio St.3d 23, 563 N.E.2d 26, 30 (1990) ("The Uniform Fiduciaries Act shields a bank from liability when *the bank knows that the individual is acting for the benefit of another. The inquiry to be made is not only whether the bank had knowledge of the existence of the fiduciary relationship* but also whether the fiduciary in fact possessed the authority to conduct the transaction in question. This test is consistent with *the purposes of the Act to protect those who honestly deal with another knowing him to be a fiduciary* and to place the responsibility of employing honest fiduciaries on the principal.") (citations omitted and emphasis added); *Zions First National Bank v. Clark Clinic Corporation,* 762 P.2d 1090, 1101 (Utah 1988) ("*[T]he Act may shield a bank from negligence only when the bank knows that the party before it is acting for another.* Assuming then that the trial court correctly determined that [the fiduciary] was a fiduciary under the meaning of the Act and *that the bank knew he was acting as such,* the most significant determination for purposes of our review and for deciding whether [the defendant-bank] may be shielded from liability under the Act is whether [the fiduciary] was an authorized fiduciary empowered to conduct and consummate the transactions at issue.") (citation omitted and emphasis added); *see Boutros v. Riggs National Bank, D.C.,* 655 F.2d 1257, 1259 (D.C.Cir.1981) (stating that "*[t]he [UFA] applies only 'when one person honestly deals with another knowing him to be a fiduciary'* " and finding that the trial court's grant of a judgment n.o.v. to the defendant-bank was improper because "a reasonable jury could have found that [the fiduciary] had not been authorized

22

to make withdrawals from the account and *that [the defendant-bank] did not 'know' that it was dealing with a fiduciary ")* (citation omitted).[3]

For these reasons, as I would affirm the order of the Superior Court, I respectfully dissent.

Justices NIGRO and BAER join this dissenting opinion.

**3.** *See also, Farmers Banking & Trust Co. of Montgomery County v. Bender,* 175 Md. 625, 3 A.2d 743, 745 (1939), *UNR–Rohn, Inc. v. Summit Bank of Clinton County,* 687 N.E.2d 235, 238 (Ind.Ct.App. 1997), *Larson,* 553 N.W.2d at 283, *County of Macon v. Edgcomb,* 274 Ill.App.3d 432, 211 Ill.Dec. 136, 654 N.E.2d 598, 601 (1995), and *Terre Haute Industries, Inc. v. Pawlik,* 765 F.Supp. 925, 929 (N.D.Ill.1991).