Cass Plumbing & Heating Company, Inc. et al., Appellants *v.* PPG Industries, Inc., Urban Redevelopment Authority of Pittsburgh and City of Pittsburgh, Appellees.

Argued May 6, 1980, before President Judge CRUMLISH and Judges WILKINSON, JR., MENCER, ROGERS, BLATT, CRAIG and WILLIAMS, JR. Judge MAC-PHAIL did not participate.

*Thomas J. Dempsey*, for appellants.

*Philip Baskin,* with him *George R. Specter, Baskin & Sears,* for PPG Industries, Inc., appellee.

*D. R. Pellegrini,* Deputy City Solicitor, with him *John O. Wicks, Jr.,* General Counsel, *Sharon M. O'Neill,* Assistant Counsel, *V. L. St. Johns,* Assistant City Solicitor and *Mead J. Mulvihill, Jr.,* for Urban Redevelopment Authority and City of Pittsburgh, appellees.

OPINION BY JUDGE ROGERS, July 10, 1980:

The appellants, plaintiffs below, have appealed from an order of the Court of Common Pleas of Allegheny County sustaining preliminary objections to, and dismissing, their amended complaint in equity. The appellants are the owners of properties on or near Market Street in downtown Pittsburgh located in what has been designated by city authorities as Redevelopment Area No. 44. The appellees, defendants below, are the City of Pittsburgh, the Urban Redevelopment Authority of Pittsburgh (URA) and PPG Industries, Inc. (PPG). The preliminary objections which were sustained (a number of others having been overruled) were a demurrer, a question as to the jurisdiction of equity and the objection of the existence of a remedy at law.

We learn from the well pleaded facts of the amended complaint that the city Planning Commission on July 6, 1978 certified as blighted, within the intendment of the Urban Redevelopment Law,[1] an area of the city which included the appellants' properties; that the Planning Commission thereafter prepared a Redevelopment Area Plan and presented it to the URA; that this plan provided for the sale of portions of the area certified as blighted to PPG, a private

---

[1] Act of May 24, 1945, P.L. 991, §1 et seq., *as amended,* 35 P.S. §1701 et seq.

corporation, for its use as the site of a corporate headquarters and as rental properties to be constructed by PPG; that URA has approved the Redevelopment Area Plan; that URA has also approved agreements with the city providing for street vacations and dedications, rezoning, financing of public improvements and other matters; that URA has approved an agreement with PPG for the purchase by PPG of designated parcels of the project; that URA has approved an agreement with an owner of land and buildings in the project for the acquisition and relocation of its properties; and that there exists a draft of a contract between URA and PPG providing that PPG will pay URA a service fee and other expenses incurred by the latter in preparing the land of the project for PPG's use. The plaintiffs allege that these activities, and others unnecessary here to mention, show that URA and the City have been acting as agents of PPG to acquire for it the plaintiffs' property for PPG's primary gain and benefit and that the actions of the defendants have been taken arbitrarily, capriciously, in bad faith and in disregard of plaintiffs' rights.

It is important, before leaving the discussion of the circumstances, to emphasize that the original complaint was filed on May 29, 1979, the amended complaint was filed on June 15, 1979 and the preliminary objections were disposed of in the court below on August 10, 1979. The appeal to this court was filed September 6, 1979. In late January 1980 the appellees, defendants below, filed a Motion to Dismiss the Appeal, in which they allege that on May 31, 1979 City Council had conducted a public hearing on the redevelopment proposal as required by the Urban Redevelopment Law, at which the appellants appeared and were heard; that on July 21, 1979 City Council approved the proposal; that declarations of taking of all the appellants' properties were filed on January

18, 1980; and that by reason of these events and the present availability of the remedies provided by the Eminent Domain Code, Act of June 22, 1964, Special Sess., P.L. 84, *as amended*, 26 P.S. §1-101 et seq., all of the issues in this appeal are moot.

The amended complaint is in seven counts.

In Count I the plaintiffs say that the Urban Redevelopment Law denies them due process because it does not require, and they were not provided, notice or hearing before the area in which their properties are located was certified as blighted by the city Planning Commission. They ask that the Urban Redevelopment Law be declared unconstitutional "under the facts of this case and void as applying to the plaintiffs" and seek an injunction against the acquisition of their properties. The court below described the procedures ordained by the Urban Redevelopment Law— certification of blight by the planning agency; the preparation of a redevelopment proposal by the URA; and certification of the proposal to the governing body which, after public hearing, may approve execution of the project by URA, including by exercise of the power of eminent domain. The court then noted that the Act had been upheld against other constitutional attacks in *Belovsky v. Redevelopment Authority of Philadelphia*, 357 Pa. 329, 54 A.2d 277 (1947), but acknowledged that the plaintiffs' charge of want of procedural due process for lack of notice and hearing, was of first instance. It concluded that since property is not taken or interfered with by the certification of blight, citing *Hazelton Redevelopment Authority v. Hudock,* 2 Pa. Commonwealth Ct. 670, 281 A.2d 914 (1971), and since the Urban Redevelopment Law requires that a public hearing be conducted by the governing body prior to acting on the redevelopment proposal, due process was afforded; and it sustained the demurrer to this count.

In *Hazelton Redevelopment Authority v. Hudock,* *supra,* the issue was whether the activities of the Hazelton Redevelopment Authority were a *de facto* taking and we decided that "the preliminary actions by the Redevelopment Authority in designating the subject premises as part of a renewal area and undertaking negotiations to acquire the property and others do not constitute substantial interference with the owner's use and enjoyment of his land, amounting to a legally effective 'taking'." 2 Pa. Commonwealth Ct. at 674, 281 A.2d at 916-17. However, in the same case we were at pains to say that the "activities carried on incident to massive, complex and time-consuming programs launched by government . . . *may* so substantially interfere with . . . property as to constitute a compensable injury" (emphasis in original), 2 Pa. Commonwealth Ct. at 675, 281 A.2d at 917, and we directed readers' attention to *Commonwealth's Crosstown Expressway Appeal,* 3 Pa. Commonwealth Ct. 1, 281 A.2d 909 (1971), where we upheld the action of a trial court overruling preliminary objections to a petition for the appointment of viewers alleging activities quite similar to those attributed to the defendants in this case. *See Conroy-Prugh Glass Co. v. Commonwealth,* 456 Pa. 384, 321 A.2d 598 (1974); Snitzer, Pennsylvania Eminent Domain §201(1)-(b). Hence, we do not agree that the amended complaint, which contains averments that the plaintiffs' properties can no longer be sold or mortgaged, that tenants have declined to renew their leases, and that vandalism and other forms of deterioration have occurred—so fail to describe injury to or interference with rights in property as to cause this count to fall before a demurrer.

Nor can we agree that it was clear on the face of the amended complaint, which spoke as of a time before the city had, or was obliged to, conduct a public hearing, that the plaintiffs' rights to procedural due process had been fully observed.

The URA's power to condemn is conferred by the Urban Redevelopment Law. If that Law, as the plaintiffs assert, was unconstitutionally applied to them, URA's power to condemn their properties is in question. It seems to us, therefore, that the plaintiffs did in Count I state a cause of action.

Before the advent of the Eminent Domain Code, equity was the appropriate vehicle for relief against allegedly improper threatened prospective takings: *Belovsky v. Redevelopment Authority of Philadelphia, supra; Schenck v. City of Pittsburgh,* 364 Pa. 31, 70 A.2d 612 (1950); *Winger v. Aires,* 371 Pa. 242, 89 A. 2d 521 (1952); *Oliver v. Clairton,* 374 Pa. 333, 98 A.2d 47 (1953). Equity remains as the remedy for threatened prospective takings after the enactment of the Code. Section 406, 26 P.S. §1-406, in providing for preliminary objections to declarations of taking questioning the power or right to condemn follows with the phrase ''unless the same has been previously adjudicated.'' Further, a different rule would leave landowners threatened by improper condemnations and desiring to keep their properties, without any remedy at all while the putative condemnor contemplates an assertedly improper action at its leisure.

Therefore, having concluded that the plaintiffs stated a cause of action in Count I and that equity is the remedy for challenging prospective condemnations, we are forced further to conclude that the preliminary objections to the Count I should have been overruled.

However, we now have before us the defendants' Petition to Dismiss based on the fact that declarations of taking have indeed been filed and preliminary objections lodged. Section 303 of the Eminent Domain Code, 26 P.S. §1-303, says that the Code provides the complete and exclusive procedure and law governing condemnations; and Section 406, 26 P.S. §1-406, au-

thorizes condemnees to file preliminary objections to challenge the power or right of the condemnor to appropriate the condemned property. There are precedents for our granting the motion and directing the plaintiffs to the Eminent Domain Code proceedings on their preliminary objections as their remedy for the alleged want of power or right in URA to take their properties. In *Valley Forge Golf Club v. Upper Merion Township,* 422 Pa. 227, 221 A.2d 292 (1966), the Supreme Court affirmed an order dismissing the plaintiff's complaint in equity brought before a declaration of taking was filed, writing:

> We see no valid distinction between this situation and a case in which the condemnatory action of the local legislative body has been manifested prior to suit such as would allow the circumvention of legislatively established eminent domain proceedings by means of a suit in equity. Indeed, the Eminent Domain Code of 1964 establishes procedures which protect and safeguard the rights of the condemnee to the same extent as would a proceeding in equity.

422 Pa. at 229, 221 A.2d at 293. To the same effect is *Ramad Realty Corp. v. Springsettsbury Township Sewer Authority,* 10 Pa. Commonwealth Ct. 1, 309 A. 2d 80 (1973); *see also McConnell Appeal,* 428 Pa. 270, 236 A.2d 796 (1968); *Vance v. Kassab,* 15 Pa. Commonwealth Ct. 328, 325 A.2d 924 (1974).

In Count II the plaintiffs allege that neither their properties nor the area in which they are located are in fact blighted and that no public purpose would be served by condemning their properties. In *Oliver v. Clairton, supra,* a charge that a certification of blight had been improvidently made was adjudicated in equity. Similarly, in *Winger v. Aires, supra,* a complaint that properties were being taken for other than public use was adjudicated in equity. Hence, Count II

was cognizable in equity prior to the filing of declarations of taking and the preliminary objections to Count II also should have been overruled. However, since declarations of taking have since been filed and preliminary objections lodged, the issues raised in Count II must also be directed to be disposed of in the Eminent Domain Code proceedings. Both challenges are clearly cognizable on preliminary objections in Eminent Domain Code proceedings. In *Faranda Appeal*, 420 Pa. 295, 216 A.2d 769 (1966), it was held that a challenge to the certification of blight must be made by preliminary objection to the declaration of taking. In *Condemnation Proceedings by Redevelopment Authority of Philadelphia*, 19 Pa. Commonwealth Ct. 272, 339 A.2d 885, *cert. denied*, 423 U.S. 1018 (1975), the charge that a taking was for private not public purpose was disposed of by the means of preliminary objections to declarations of taking.

Our conclusion with respect to Count II must, therefore, be the same as that made with respect to Count I: that the preliminary objections to Count II of the complaint in equity should, at the time they were made, have been overruled but that declarations of taking having been filed and preliminary objections thereto lodged, the defendants' Motion to Dismiss the appeal as to this Count should be granted.

In Count III the plaintiffs have sparsely pleaded that the activities of the defendants described elsewhere in the complaint ''are maliciously interfering with the beneficial property rights and contracts of the plaintiffs on a continuing basis''. From plaintiffs' brief we gather that the wrong intended to be vindicated by this complaint is an alleged continuous trespass by interference with contracts the plaintiffs, as merchants doing business in the certified area, have or may have with third persons. The tort involved seems to be that described in Section 766 of the Re-

statement (Second) of Torts subjecting to liability one who intentionally and improperly interferes with the performance of a contract between another and a third person. The plaintiffs note that equity may enjoin repeated and continuing trespasses, citing *Rogoff v. Buncher Co.*, 395 Pa. 477, 151 A.2d 83 (1959), including this tort continuously committed. The court below seemed to reason that whatever interference with contracts may have been pleaded, it was not improper because it was done under the aegis of The Urban Redevelopment Law; and further that as adequate remedy existed on the law side of the court. We agree with the plaintiffs that equity affords relief for continuing trespasses of this nature and would have afforded relief on proper proofs before the filing of declarations of taking. Now that declarations have been filed and challenged, injunctive relief is precluded at least until it has been determined in the Eminent Domain Code proceedings whether or not URA had the power and right to condemn the plaintiffs' properties. If it should be determined that URA had such power, then, of course, no injunction may issue. If the plaintiffs' preliminary objections to the declarations of taking are sustained, the plaintiffs may renew their application in equity to enjoin such trespasses as they believe continue.

It is not clear to us whether the plaintiffs sought money in Count III. All of their claims for relief are listed at the end of their amended complaint and none refer to the counts of the amended complaint. One prayer is for money damages. If the plaintiffs sought money damages by Count III and if it happens that the condemnations are upheld, Section 604 of the Eminent Domain Code, 26 P.S. §1-604, provides that any change in the fair market value prior to condemnation due to the imminence of condemnation shall be disregarded in awarding damages, so that damages

would include economic deterioration caused by pre-condemnation activities of the condemnor. If the plaintiffs prevail in their preliminary objections to the declarations of taking, they may have the damages provided by Section 406 and 408, 26 P.S. §§1-406, 1-408, and if these provisions are not sufficiently inclusive as to compensate them fully, they may sue at law.

We will dismiss the appeal as to Count III.

In Count IV of the amended complaint the plaintiffs allege that federal funds will be used in the project; and that ''[a]s far as is known to the plaintiffs,'' defendants have not complied with the Uniform Relocation Assistance and Real Property Acquisition Policies Act of 1970, 42 U.S.C. §4601, et seq., or the National Environmental Policies Act, 42 U.S.C. §4321, et seq. As of the time the amended complaint was filed and the matter was before the court below on the defendants' preliminary objections neither of the Federal statutes cited nor any of the regulations thereunder were yet of application. The Relocation Assistance Policies Act pertinently requires that assistance be given to persons displaced in projects carried out with federal assistance. Since the plaintiffs had not been displaced, this complaint was premature. Similarly, since the amended complaint seeks to prevent the proposed development, the National Environmental Policy Act, which requires environmental impact studies as a precedent to physically changing the environment, was not yet pertinent. Further, we are directed to no authority for enjoining a proposed condemnation by a state or local agency because the condemnor may not qualify for federal funding. We agree that the preliminary objections to the Count should have been sustained.

In Count V of their amended complaint, the plaintiffs aver that three of them have been in business at

their present locations for periods of thirty-two to seventy years and that their properties are part of the natural, scenic, historic and esthetic values of the environment of this Commonwealth and thus entitled to protection as a public resource under Section 27 of Article I of the Pennsylvania Constitution. The lower court found that these allegations failed to set forth a cause of action. We agree. The mere presence, however long, of an entity at a location does not endow the latter with the values sought to be protected by the Constitutional provision cited—air, water and the preservation of natural, scenic, historic or esthetic values of the environment.

By Count VI of their amended complaint the plaintiffs seek, they say "as a bill of discovery," the assistance of the equity court in discovery, justifying the request on the alleged "magnitude of the activities of the defendants," the "number of persons to be deposed and interrogated" and "the limited time which would be available under the Eminent Domain Code." Of course, the Eminent Domain Code has now been invoked. Further, we discern nothing in the pleading which suggests that equity could ever have done anything more effective to the appellants' ends than they could do for themselves by the use of the Pennsylvania deposition and discovery rules. Pa. R.C.P. §4001 et seq. Therefore we agree that the preliminary objections to this Count were properly sustained. We do not agree, however, that the repeal of Section 13 of the Act of June 16, 1836, P.L. 784, 17 P.S. §281, and the Act of Feb. 14, 1857, P.L. 39, §1, 17 P.S. §283, by Section 2a of the Judiciary Act Repealer Act of 1978, 42 P.S. §2002 [152] [332] removed the power of equity courts to grant the prayers of bills of discovery. See 42 Pa. C.S. §§912, 931-934.

Finally, the plaintiffs in Count VII say that the city Planning Commission offended the Local Agency

Law, 2 Pa. C.S. §551 et seq., because its certification of blight was an adjudication and the Planning Commission did not provide notice of a hearing, an opportunity to be heard, and failed to make a record, all as required by the Local Agency Law. The lower court concluded that the mere certification of blight is not an adjudication within the meaning of the Local Agency Law. We agree.

Averments of the complaint generally described precondemnation activities which in combination the plaintiffs say affect their property rights. There is no allegation that the mere certification of blight affected any property rights. Of course, it can be said that it would be good if the Courts of Pennsylvania should do what the legislatures of New Jersey and New York have done—that is, to require public notice and hearing prior to a certification of an area as blighted—but even if we were so minded, this, it would appear, is not a case in which such an innovation should be introduced. The substantive issue with respect to blight raised by the plaintiffs is whether there was blight at all; that issue, as we have earlier pointed out, will be fully heard and determined in the Eminent Domain proceedings disposing of the plaintiffs' preliminary objection that there was no blight and therefore no power to condemn.

Accordingly, in view of the Eminent Domain Code proceedings now available, we dismiss the appeals as to Counts I, II and III of the amended complaint. We affirm the order below sustaining the preliminary objections to and dismissing Counts IV, V, VI and VII.

Judge WILLIAMS concurs in result only.

### ORDER

AND Now, this 10th day of July, 1980, it is ordered that the appeals as they relate to Counts I, II and III of the amended complaint be and they are dismissed,

all issues there raised being cognizable in the Eminent Domain Code proceedings pending below; the order sustaining preliminary objections to and dismissing Counts IV, V, VI and VII is affirmed.

DISSENTING OPINION BY JUDGE BLATT:

I respectfully dissent to the majority's disposition of Count VII of the plaintiff's complaint. I do so because I believe that the Planning Commission's certification of blight *was* an adjudication under Section 553 of the Local Agency Law, 2 Pa. C.S. §553, and required proper notice and a hearing.

The extensive powers of the Redevelopment Authority to condemn large areas of land, including those tracts of land which are safe, sanitary and prosperous but which happen to be within an otherwise blighted area, is entirely contingent on the Planning Commission's certification of the area as blighted. Section 9(i) of the Urban Redevelopment Law, 35 P.S. §1709 (i). Because the landowners here would not have been exposed to the powers of the Redevelopment Authority but for the certification of blight, I believe that the certification constitutes a determination or ruling by an agency affecting the *property rights* or the *immunities* of the landowners, and must therefore fall within the definition of an "adjudication" under the Local Agency Law. 2 Pa. C.S. §101.

Moreover, as the majority opinion recognizes in affirming the lower court's overruling of the preliminary objections to the appellants' Count I, the complex activities carried on by the Redevelopment Authority incident to the Planning Commission's certification of blight may so substantially interfere with the appellants' property as to constitute a *de facto* taking. *Hazleton Redevelopment Authority v. Hudock*, 2 Pa. Commonwealth Ct. 670, 281 A.2d 914 (1971). Any determination by a planning commission which sets

in motion a statutory scheme so ponderous as to create the potential for a taking clearly requires the procedural safeguards of notice and a hearing provided for by the Local Agency Law.

Finally, although the characterization of an agency's action as an adjudication does not depend on the existence or adequacy of a later forum for reviewing such action, the forum provided for the appellants here to contest the factual validity of the certification is clearly unsatisfactory. The first opportunity they would have available to contest the Planning Commission's certification would be by way of preliminary objections in the common pleas court to the Redevelopment Authority's declaration of taking. Section 406 of the Eminent Domain Code, Act of June 22, 1964, Special Sess., P.L. 84, 26 P.S. §1-406. Yet our Supreme Court, in *Simco Stores v. Redevelopment Authority of Philadelphia*, 455 Pa. 438, 442, 317 A.2d 610, 612-613 (1974), restricted lower courts' scope of review over planning commissions' certifications of blight, stating that: "On review a condemnee should be given an opportunity to prove that a certification of blight is arbitrary or capricious. . . . It does not require the lower court to substitute its discretion for that of the legislatively-granted discretion of the Commission." As Justice ROBERTS noted in his dissent, this procedure "impermissibly limits the property owner to only a faint shadow of his right to judicial review." *Simco, supra*, 455 Pa. at 447, 317 A.2d at 615.

It seems to me that the entire scheme for the certification of an area as blighted is weighted against the landowners in favor of the condemnor, leaving the Planning Commission and the Redevelopment Authority "with unbounded, unfettered and limitless discretionary power to appropriate and condemn as dilapidated . . . *as large an area* as they believe can be made more prosperous." *Faranda Appeal,* 420 Pa.

295, 304, 216 A.2d 769, 774 (1966) (concurring opinion of Chief Justice BELL). I believe, therefore, that Pennsylvania should follow the example of its neighboring states in requiring public notice and hearing concerning the condition of an urban area prior to the certification of the area as blighted for the purposes of urban redevelopment. *See* New Jersey Blighted Area Act, N.J.S.A. 40:55-21.1(e); New York Urban Redevelopment Corporations Act, 24 C.L.S. Priv. Hous. Fin. §203(3).

Accordingly, I would reverse the ruling of the court below in its granting of the appellees' preliminary objection to the appellants' Count VII and its finding that the certification of blight was *not* an adjudication under the Local Agency Law.