Edward M. MAZUR; Jeffrey W. Bull; and an unincorporated association Citizens Against Tax Incremental Financing, Appellants

v.

TRINITY AREA SCHOOL DISTRICT; Trinity School Board; and Emily Minor; Jerry Chambers; Charles McCreary; Stephanie Komorowski; Kathy Penkowski; Dennis McWreath.

Edward M. Mazur; Jeffrey W. Bull; and an unincorporated association, Citizens Against Tax Incremental Financing, Appellants

v.

Washington County; Washington County Board of Commissioners; Commissioner Bracken Burns and Commissioner Larry Maggi.

Edward M. Mazur; Jeffrey W. Bull; and an unincorporated association, Citizens Against Tax Incremental Financing, Appellants

v.

South Strabane Township; South Strabane Township Board of Supervisors; Anthony Zelenka, Charles Kosey and Billy Bell, as Supervisors.

Commonwealth Court of Pennsylvania.

Argued Feb. 7, 2007.
Decided June 25, 2007.

**1262**

Peter M. Suwak, Washington, for appellants.

Falco A. Muscante, Pittsburgh, for appellee, Trinity Area School District.

Robert J. Grimm, Pittsburgh, for appellee, Washington County.

Thomas A. Lonich, Washington, for appellee, South Strabane Township.

BEFORE: LEADBETTER, President Judge, and McGINLEY, Judge, and SMITH–RIBNER, Judge, and PELLEGRINI, Judge, and FRIEDMAN, Judge, and COHN JUBELIRER, Judge, and LEAVITT, Judge.

OPINION BY Judge LEAVITT.

Edward M. Mazur, Jeffrey W. Bull, and Citizens Against Tax Increment Financing (Citizens) appeal an order of the Washington County Court of Common Pleas (trial court) sustaining the preliminary objections of several local taxing districts [1] to their six consolidated actions. Each action challenged the use of tax increment financing for a commercial development project in South Strabane Township, Washington County. In three, Citizens appealed resolutions adopted by Washington County, the Trinity Area School District and South Strabane Township to participate in the financing arrangement. In the three remaining actions, Citizens sought equitable and declaratory relief on similar grounds, *i.e.*, that the decisions were wasteful of the tax dollar. In this case, we consider whether the trial court erred in determining that it lacked subject matter jurisdiction over Citizens' claims and whether their equitable complaints failed to state claims upon which relief could be granted. We affirm.

At issue in this case is the use of tax increment financing (TIF) [2] for a proposed 333–acre commercial development known

---

1. The taxing entities named as defendants in the consolidated actions are (1) Trinity Area School District, its School Board, and individual Board members; (2) Washington County, the Washington County Board of Commissioners, and individual Commissioners; and (3) South Strabane Township, its Board of Supervisors, and individual Supervisors. We shall refer to these entities collectively as the "taxing districts."

2. Tax increment financing is "a technique used by a municipality to finance commercial developments [usually] involving issuing bonds to finance land acquisition and other up-front costs, and then using the additional property taxes generated from the new development to service the debt." *Ondek v. Allegheny County Council*, 860 A.2d 644, 645 n. 2 (Pa.Cmwlth.2004) (quoting BLACKS LAW DICTIONARY at 1502 (8th ed.2004)). The Tax Increment Financing Act (TIF Act), Act of July 11,

as Victory Centre in South Strabane Township, Washington County. Victory Centre will include a Tanger Factory Outlet Center, Bass Pro Shops, additional retail stores, a hotel and restaurants. In 2005, representatives of the taxing districts and the Washington County Redevelopment Authority formed a TIF Committee to discuss the creation of a tax increment district.[3] In July 2005, the Redevelopment Authority presented its TIF proposal at a public meeting of the TIF Committee. The proposal calls for each of the three participating taxing districts to allocate 80 percent of the tax increment to the Redevelopment Authority for debt payment on the TIF loan with 20 percent of the increment retained by each taxing district. The estimated cost of Victory Centre is $400 million, of which 93 percent will be privately financed and the remainder financed by TIF. The TIF proposal has a term of 20 years. The TIF Committee approved the proposal.

Shortly thereafter, the taxing districts each held public meetings to vote on the proposal recommended by the TIF Committee. On August 4, 2005, the School Board, by a vote of 6–3, approved the School District's participation in the TIF proposal. The County Commissioners approved the County's participation on August 5, 2005, by a vote of 2–0 with one commissioner abstaining. The Township Supervisors considered the TIF proposal at public meetings beginning in August 2005.

On October 25, 2005, the Township Supervisors, by a vote of 3–2, enacted two ordinances creating the Victory Centre Development Tax Increment Financing District and approving the Township's participation. The Supervisors declared that the TIF district is a blighted area, as required by Section 5(a)(6)(iv)(H) of the TIF Act, 53 P.S. § 6930.5(a)(6)(iv)(H). One of the Supervisors, Billy Bell, was unable to attend the October 25, 2005, meeting due to illness and cast his vote in favor of the TIF proposal by telephone. This was not the Township's first action concerning the proposed location of Victory Centre. In August 2005, the Supervisors voted 5–0 to rezone the area as commercial and to amend the Township's comprehensive plan to identify the area as a prime location for regional shopping and entertainment.[4]

1990, P.L. 465, *as amended*, 53 P.S. §§ 6930.1–6930.13, was enacted in response to what the General Assembly perceived as a failure of the Urban Redevelopment Law, Act of May 24, 1945, P.L. 991, *as amended*, 35 P.S. §§ 1701–1719.1, to cure blighted conditions in the Commonwealth's urban communities. 53 P.S. § 6930.2(a)(1) and (2). Hence the stated purpose of the TIF Act was to "provide an alternative method for use by authorities in pursuing redevelopment efforts under the Urban Redevelopment Law and other applicable laws." 53 P.S. § 6930.2(a)(3).

3. *See* Section 5(a)(2) of the TIF Act, 53 P.S. § 6930.5(a)(2) ("Each affected municipality and school district shall designate a representative to meet with the authority to discuss the project plan and the tax increment financing, and shall notify the authority of its designated representative."). In May 2005, Citizens filed a complaint in the trial court alleging that the taxing districts violated the Sunshine Act, 65 Pa.C.S. §§ 701–716, because the TIF Committee meetings were not open to the public. This Court rejected Citizens' claims in *Mazur v. Washington County Redevelopment Authority et al.*, 900 A.2d 1024 (Pa.Cmwlth.2006), *appeal denied*, 590 Pa. 671, 912 A.2d 839 (2006). We held that "the interaction described by Section 5(a)(2) of the TIF Act does not create an agency subject to the Sunshine Act." *Mazur*, 900 A.2d at 1029. We also noted that the TIF Act requires public meetings and votes by the redevelopment authority and the taxing districts, all of which were conducted in this case.

4. The proposed site of Victory Centre is located near the intersection of two interstate highways and is adjacent to The Meadows racing facility, which is currently being expanded to include a casino.

Citizens commenced six separate actions against the School Board, the County and the Township Supervisors. Three of these actions appealed the taxing districts' respective decisions to approve the TIF proposal. In summary, Citizens argued that the approval of the TIF proposal by each taxing district was a palpable abuse of discretion and a knowing waste of taxpayer resources. In support, they averred that the taxing districts could not in good faith adopt a proposal preconditioned on a designation of the subject property as blighted because the Township had only months earlier rezoned the property as commercial, identifying it as a prime location for regional shopping and entertainment. Accordingly, Citizens believed the TIF proposal was inconsistent with the Township's revised master plan. Citizens also argued that the project was viable without tax increment financing since approximately 93 percent of the projected $400 million cost was to be privately financed. Finally, Citizens contended that the taxing districts made doubtful or false assumptions regarding the extent to which private property would need to be taken by eminent domain and relied on inaccurate cost estimates for obtaining rights of way, constructing roads and installing sewers.

With respect to the Township's enactment of the requisite ordinances, Citizens averred that Supervisor Billy Bell's vote by telephone was improper, contrary to law and constituted an abuse of discretion. Citizens asserted, *inter alia,* that Supervisor Bell was not present for several of the public meetings that preceded the Board's vote on October 25, 2005, and that he did not hear any public comment at that final meeting. Citizens argued that the telephone vote procedure used in this case violated the Sunshine Act, 65 Pa.C.S. §§ 701–716.

Based upon the foregoing averments, Citizens asked the trial court to set aside the decisions of the taxing districts to approve the TIF proposal and, in the case of the School Board and the Township Board of Supervisors, declare that the individual members not participate in any subsequent vote on the TIF proposal.

Simultaneous with these "appeals," Citizens also initiated complaints for equitable and declaratory relief against each of the taxing districts. The allegations in each of these complaints were identical to the allegations in the local agency appeals, as was the relief requested. Citizens acknowledged the corresponding agency appeal in each complaint, but stated that the complaints were filed as a precautionary measure should the trial court dismiss the agency appeals and leave them without an adequate remedy at law.

The taxing districts filed preliminary objections to all six actions, seeking to have them dismissed for lack of subject matter jurisdiction and for failure to state a cause of action. The School Board and the Township Supervisors also claimed absolute privilege and immunity on behalf of their individual members. The trial court consolidated the matters and, on March 28, 2006, entered an order dismissing all six actions. Citing this Court's decisions in *Ondek v. Allegheny County Council,* 860 A.2d 644 (Pa.Cmwlth.2004), and *Mercurio v. Allegheny County Redevelopment Authority,* 839 A.2d 1196 (Pa.Cmwlth.2003), the trial court concluded that it lacked subject matter jurisdiction over all six of the actions. The trial court held, alternatively, that Citizens failed to state a claim upon which relief could be granted. The present appeal followed.

Citizens raise four issues on appeal. First, Citizens argue that the trial court erred in holding that it lacked subject matter jurisdiction over their appeals and complaints, noting that the Pennsylvania

Supreme Court has not yet considered whether the enactment of an ordinance or resolution pursuant to the TIF Act is subject to judicial review. Second, assuming that jurisdiction lay over any of the actions, Citizens contend that the trial court erred by sustaining the taxing districts' demurrers because their complaints averred facts sufficient to establish bad faith in the designation of the subject property as blighted. Third, Citizens argue that they were entitled to challenge the actions of the individual public officials in approving the TIF proposal. Fourth, Citizens assert that Supervisor Billy Bell violated the Sunshine Act by casting his vote by telephone.

▓▓▓ We begin with the threshold issue of the trial court's subject matter jurisdiction to hear Citizens' appeals and complaints.[5] This Court recently held in *Ondek v. Allegheny County Council,* 860 A.2d 644 (Pa.Cmwlth.2004), that an appeal will not lie under the Local Agency Law, 2 Pa.C.S. §§ 551–555, 751–754, from the enactment of a resolution by a local taxing entity authorizing the use of tax increment financing for a proposed commercial development. The rationale behind *Ondek* is that a TIF resolution is a purely legislative enactment intended to spur local development, and not an appealable "adjudication" under Section 752 of the Local Agency Law, 2 Pa.C.S. § 752. The same is true of the resolutions and ordinances enacted by the taxing districts in this case approving their participation in the TIF plan. The

trial court found *Ondek* dispositive of the question of whether it had subject matter jurisdiction over Citizens' appeals.[6] We agree and hold that the Local Agency Law does not provide a vehicle for challenging the merits of legislative enactments.

We turn, next, to Citizens' complaints against the taxing districts seeking equitable and declaratory relief. The trial court determined it lacked subject matter jurisdiction over these three actions since they, too, were challenges to the merits, or wisdom, of legislative enactments. In support, the trial court cited this Court's decision in *Mercurio v. Allegheny County Redevelopment Authority,* 839 A.2d 1196 (Pa.Cmwlth.2003). Citizens disagree with the trial court's interpretation of *Mercurio.*

In *Mercurio,* residents of Harmar Township, Allegheny County, sought to enjoin tax increment financing of a proposed commercial development. The residents raised three issues. First, they argued that the County Commissioners failed to hold a public hearing in violation of Section 5(a)(5) of the TIF Act, 53 P.S. § 6930.5(a)(5). Second, they contended that the adoption of the TIF plan by the taxing districts was arbitrary and capricious based upon a number of substantive defects, including that the defendants approved the TIF plan without due deliberation; the TIF plan conflicted with Harmar Township's comprehensive plan; and the TIF district was not "blighted" under Section 12.1 of the Urban Redevelopment

---

**5.** When reviewing orders disposing of preliminary objections, our standard of review is clear: well-pled factual averments are admitted; conclusions of law are not. *O'Hare v. County of Northampton,* 782 A.2d 7, 11 n. 6 (Pa.Cmwlth.2001). When preliminary objections raise a question of subject matter jurisdiction, "[t]he trial court's function is to determine whether the law will bar recovery due to a lack of subject matter jurisdiction." *Id.* (quoting *Kimmel Township Taxpayers Association v. Claysburg Kimmel School District,* 146 Pa.Cmwlth. 57, 604 A.2d 1149, 1152 (1992)).

**6.** Citizens concede that *Ondek* is controlling but inform the Court that they filed their appeals as a precautionary measure since the Pennsylvania Supreme Court has not yet addressed the jurisdictional issue decided in *Ondek.* This, of course, in no way diminishes the rule of law announced in *Ondek.*

Law, 35 P.S. § 1712.1.[7] Third, the residents averred that the developer's revised permit application to the Pennsylvania Department of Environmental Protection changed the project so substantially that the development could not be implemented without an amendment to the TIF plan. In accordance with these claims, the residents sought a declaration that the County resolution adopting the TIF plan and the Township resolution creating the TIF district were each null and void; a declaration that the site of the TIF district was not blighted; and a permanent injunction prohibiting the defendants from further implementing the TIF plan.

The trial court rejected the residents' claims. It determined that their challenges to the procedures used to pass the resolutions were untimely under 42 Pa. C.S. § 5571(c)(5).[8] Regarding the allegations of substantive defects in the TIF resolutions, the trial court concluded that "absent a determination that the legislative body did not act in good faith or acted wholly arbitrarily a certification of an area as blighted was not subject to judicial review." *Mercurio*, 839 A.2d at 1201. Accordingly, the trial court sustained the defendants' preliminary objec-

tions and dismissed the residents' complaint.

On appeal, the residents argued, *inter alia*, that their challenge was not untimely because the substantive defects alleged in their complaint rendered the resolutions that created the TIF district invalid. This Court rejected this argument and, in doing so, explained as follows:

> Essentially, the Appellants disagree with, and attack the enactments by the various taxing bodies that created the TIF District. It is not within the jurisdiction of this Court to rule on the wisdom of legislative enactments. "The judiciary may not sit as a superlegislature to judge the wisdom or desirability of legislative policy determinations made in areas that neither affect fundamental rights nor proceeds along suspect lines." *Fischer v. Commonwealth Department of Public Welfare*, 85 Pa.Cmwlth. 240, 482 A.2d 1148, 1161 (1984), *affirmed*, 509 Pa. 293, 502 A.2d 114 (1985), *quoting*, *City of New Orleans v. Dukes*, 427 U.S. 297, 303, 96 S.Ct. 2513, 49 L.Ed.2d 511 (1976).

*Mercurio*, 839 A.2d at 1203.[9] *See also Finucane v. Pennsylvania Milk Market-*

---

7. Act of May 24, 1945, P.L. 991, added by Act of June 23, 1978, P.L. 556, *as amended.*

8. It provides, in relevant part, that "questions relating to an alleged defect in the process of enactment or adoption of any ordinance … of a political subdivision … shall be raised by appeal or challenge commenced within 30 days after the intended effective date of the ordinance, resolution, map or similar action." 42 Pa.C.S. § 5571(c)(5).

9. This Court remanded *Mercurio* to consider the residents' third issue, *i.e.*, the project described in the developer's permit application to DEP was so different than that authorized by the TIF plan that a new TIF plan was required before the project could proceed. The trial court rejected the residents' argument that an amendment to the TIF plan was required; the court found no language in the

TIF Act requiring such an amendment. We remanded for further proceedings on this issue because it was unclear whether a redetermination of the tax increment base was necessary under the TIF Act. Should it be found that the developer in *Mercurio* lacked the authorization required under the TIF Act, the developer could be enjoined from proceeding with the project.

Citizens contend that in *Mercurio* we opened the door for their action in equity challenging the legislative enactments. That is simply not the case. The developer was a named defendant in *Mercurio* and, as would be the case in any TIF dispute, was the party that would be liable for any shortfall in financing. Here, Citizens did not name the developer of Victory Centre in any of their underlying actions. They sue only their elected representatives.

*ing Board,* 136 Pa.Cmwlth. 272, 582 A.2d 1152, 1154 (1990) ("The role of the judiciary is not to question the wisdom of the action of a legislative body, but only to see that it passes constitutional muster.").

This Court determined in *Mercurio* that the residents' claims were not a proper subject of judicial review, but it also noted that a determination of blight "made with fraud or bad faith by the governmental entity" can be reviewed. *Id.* at 1204 (citing *Schenck v. City of Pittsburgh,* 364 Pa. 31, 70 A.2d 612 (1950) and *In re Condemnation by Redevelopment Authority of the City of Lancaster,* 682 A.2d 1369 (Pa. Cmwlth.1996)). However, because the residents in *Mercurio* failed to make any specific averment of fraud or bad faith by the governmental defendants, it was unnecessary to consider this possibility. Because Citizens place such high value on this observation in *Mercurio,* we review it further here.

At issue in *Schenck,* on which *Mercurio* is based, was a tract of land certified by the City Planning Commission as blighted and targeted for redevelopment by the Urban Redevelopment Authority. Schenck, one of the affected property owners, filed a bill in equity to enjoin City Council from approving the proposal, to enjoin the Authority and the redeveloper from executing a contract, and to enjoin the Authority from taking any steps to acquire land within the project area by eminent domain or to convey any such land to the redeveloper. Schenck asserted that the mere fact that the City Planning Commission certified the tract as blighted did not conclusively establish that the condemnation was for a public purpose.

Our Supreme Court answered that contention succinctly: "[I]n the absence of any indication that the Commission did not act in good faith or was wholly arbitrary in certifying the area designated by it as blighted, its certification to that effect is not subject to judicial review." *Schenck,* 364 Pa. at 35, 70 A.2d at 614. The Court continued that the Commission's findings of blight brought the matter within the scope of the Urban Redevelopment Law, which vested the power of eminent domain in the Urban Redevelopment Authority. The Court reiterated the long-standing principle that where the right of eminent domain is vested in a municipality or administrative body, "the question as to whether the circumstances justify the exercise of the power in a given instance is not a judicial one, at least in the absence of fraud or palpable bad faith." *Id.* at 36, 70 A.2d at 614 (footnote omitted).

*City of Lancaster* reiterates these principles of eminent domain law. There, a condemnee appealed from a trial court order overruling his preliminary objections to a declaration of taking filed by the City of Lancaster's redevelopment authority. The condemnee argued, unsuccessfully, that the authority acted in bad faith throughout the condemnation proceedings. This Court affirmed the trial court, noting that the condemnee had failed to sustain his heavy burden of demonstrating bad faith through clear averments of fact and clear, precise and indubitable evidence. *City of Lancaster,* 682 A.2d at 1372.

■ *Schenck* and *City of Lancaster* arose from complaints filed by individual landowners seeking to prevent the taking of their property by eminent domain. A taking of property by eminent domain can be challenged by filing preliminary objections pursuant to Section 306 of the Eminent Domain Code, 26 Pa.C.S. § 306. Indeed, as this Court explained in *City of Lancaster,*

[The] Local Agency Law does not apply to certifications of blight, because the Eminent Domain Code provides the exclusive method to challenge the propriety of the condemnation.

682 A.2d at 1372. A taking can be stopped if the landowner succeeds in showing that the taking is not for a public purpose, and it is certain that a fraudulent condemnation is antithetical to a public purpose. At the same time,

> [i]t has uniformly been held that equity does not have jurisdiction to enjoin a condemnation, whether or not a declaration of taking has been filed; ... preliminary objections shall be the exclusive method of challenging the right or power to condemn.

*Vartan v. Reed,* 100 Pa.Cmwlth. 163, 514 A.2d 646, 648 (1986).

■ In reiterating these well-established eminent domain principles in *Mercurio,* this Court did not open the door to any member of the public to initiate a suit in equity to challenge the wisdom of an ordinance or resolution. It may be that an ordinance or resolution making a blight determination as a result of fraud could be challenged as procedurally defective pursuant to 42 Pa.C.S. § 5571(c)(5), although we are unable to find any such precedent. The other platform for pursuing a claim that a blight determination was fraudulent is in a condemnation proceeding by the person whose property is subject to condemnation. Litigants may not sidestep remedies prescribed by statute by pursuing a suit in equity. *See City of Lancaster,* 682 A.2d at 1372; *Vartan,* 514 A.2d at 648.[10]

■ Turning once again to Citizens' specific claims, they are similar to those raised by the residents in *Mercurio.* Citizens argue that the approval of the TIF proposal by each taxing district was an abuse of discretion and a waste of taxpayer resources since approximately 93 percent of the projected $400 million cost of the Victory Centre is to be privately financed. They also maintain that the taxing districts made doubtful or false assumptions regarding the extent to which private property will need to be taken by eminent domain and relied upon inaccurate cost estimates for obtaining rights of way, constructing roads and installing sewers. These conclusory allegations are nothing more than an attack on the wisdom of the taxing districts' legislative enactments. Citizens do not allege that any of the ordinances or resolutions are unconstitutional and, under *Mercurio,* such allegations of harm are not justiciable. Accordingly, the trial court properly sustained the taxing districts' preliminary objections to subject matter jurisdiction over those claims.

---

10. The dissent ignores basic principles of equity. Equity provides remedies where the law has established a right but not an adequate remedy. In fashioning the remedy, however, equity must follow the law. Our Supreme Court has stated:

> Even recognizing that a court of equity has broad powers, '(i)t is a mistake to suppose, that a court of equity is amenable to no law, either common or statute, and assumes the rule of an arbitrary legislator in every particular case.' ... When the rights of a party are clearly established by defined principles of law, equity should not change or unsettle those rights. Equity follows the law.

*First Federal Sav. and Loan Ass'n of Lancaster v. Swift,* 457 Pa. 206, 210, 321 A.2d 895, 897 (1974) (citations omitted). *See also East Hempfield Township v. Brubaker,* 828 A.2d 1184, 1188 (Pa.Cmwlth.2003) ("[a] court of equity has no more right than has a court of law to act on its own notion of what is right in a particular case [and] must be guided by the established rules and precedents.") (citation omitted).

What is absent from the dissent's analysis is any explanation of what clearly established constitutional, statutory or common law right of Citizens will be vindicated through equitable relief. What the dissent is really attempting to do is to use equity to create a cause of action for citizens to challenge the wisdom of an ordinance or other legislative enactment. Citizens' "remedy" lies in the ballot box, not in court.

■ Assuming, *arguendo*, that this Court could review, in equity, a legislative blight designation resulting from fraud, we will, in the interest of finality, address Citizens' second issue on appeal. They contend that they averred sufficient facts to establish bad faith in the Township Supervisors' designation of the subject property as blighted and, therefore, the trial court erred by sustaining the taxing districts' demurrer to that claim.[11] We disagree.[12]

■ Borrowing for the moment our Supreme Court's analysis in *Schenck* and *City of Lancaster*, a determination of blight can be set aside only where fraud or bad faith by the governmental entity is proven. *Schenck*, 364 Pa. at 35, 70 A.2d at 614. Further, "[t]he law presumes that public officials perform their duties in good faith." *City of Lancaster*, 682 A.2d at 1372. Bad faith cannot be averred "merely by bald assertions. Bad faith must be described by clear averments of fact in the pleadings and proved by clear, precise and indubitable evidence." *Id.* Fraud must be pled with particularity. PA. R.C.P. No. 1019(b). ("Averments of fraud or mistake shall be averred with particularity.").

Citizens contend that because the Township Supervisors voted to rezone the property to a commercial designation, and at the same time declared the area to be a prime location for regional shopping and entertainment, "it is obvious that they cannot now assert that they in good faith believed the property to be 'blighted'." Citizens' Brief at 14. This is a bald assertion, unsupported by any clear averments of fact to support a finding of fraud or bad faith. Moreover, Citizens do not explain how the designation of an area as blighted, and the conclusion that it is also a prime location for commercial development, are mutually exclusive. It seems just as likely that economic investment, whether private or tax increment financed, may be the catalyst that is necessary to realize the full commercial potential of a piece of property. That Citizens disagree with their elected Supervisors as to the appropriate financing mechanism is obvious; however, it is not a legally sufficient reason for a court to set aside their actions. The trial court properly sustained the taxing districts' demurrer to Citizens' challenge to the Township's designation of the subject property as blighted.[13]

11. Citizens challenged the designation of blight in each of their complaints. This claim was only properly lodged against the Township, however, since it was the Board of Supervisors who enacted the ordinance creating the TIF district and in doing so declared the area to be blighted.

12. This Court's standard of review of the trial court's order sustaining preliminary objections in the nature of a demurrer is limited to determining whether the trial court abused its discretion or committed an error of law. *Mercurio*, 839 A.2d at 1201 n. 5. In ruling on preliminary objections, the court must accept as true all well pled allegations of material fact. *Id.* A demurrer should be sustained only in cases that are free from doubt and only when it appears with certainty that the law permits no recovery under the allegations set forth. *Id.*

13. Citizens' third issue on appeal is closely related to their first two issues. Citizens contend that they were entitled to directly challenge the actions of the individual public officials who voted in favor of the TIF proposal. Citizens acknowledge in their brief to this Court that "[s]ince no damages are sought this [issue] is of minor practical importance, except for purposes of affixing responsibility." Citizens' Brief at 19. In actuality, this issue has no importance. Regardless of whether Citizens are challenging the actions of the individual representatives of the taxing districts or the taxing districts themselves, we have already determined that Citizens' claims are either not subject to judicial review or were legally insufficient. It is therefore not necessary to "affix responsibility."

In their final issue on appeal, Citizens argue that the Township Board of Supervisors violated the Sunshine Act by allowing Supervisor Billy Bell to cast his vote in favor of the TIF proposal by telephone. Citizens aver that the Supervisors wrongfully prohibited any public discussion of the matter before Supervisor Bell cast his vote and should not have allowed his vote since Supervisor Bell was not present for several of the public meetings preceding the vote. Citizens believe that the public's right under the Sunshine Act to participate and be meaningfully heard by their elected officials was abrogated. Again, we disagree.

The stated purpose of the Sunshine Act is as follows:

> The General Assembly finds that the right of the public to be present at all meetings of agencies and to witness the deliberation, policy formulation and decision-making of agencies is vital to the enhancement and proper functioning of the democratic process and that secrecy in public affairs undermines the faith of the public in government and the public's effectiveness in fulfilling its role in a democratic society.

65 Pa.C.S. § 702(a). This purpose is accomplished through Section 704, which states, with two exceptions not relevant here, that "[o]fficial action and deliberations by a quorum of the members of an agency shall take place at a meeting open to the public." 65 Pa.C.S. § 704. For purposes of the Sunshine Act, a "meeting" is "[a]ny prearranged gathering of an agency which is attended *or participated in* by a quorum of the members of an agency held for the purpose of deliberating agency business or taking official action." 65 Pa.C.S. § 703 (emphasis added).

Our Supreme Court considered a similar challenge to that raised by Citizens in *Babac v. Pennsylvania Milk Marketing Board,* 531 Pa. 391, 613 A.2d 551 (1992).

In that case, the Court considered whether participation of members of the Pennsylvania Milk Marketing Board by speaker telephone in a meeting open to the public convened for the purpose of taking official action violated the Sunshine Act. The Court held that the Board members did not have to be physically present at all of the Board's meetings, noting that under the Sunshine Act,

> [o]fficial action by a quorum of members of an agency can take place at a meeting attended or participated in by such quorum. In order to accord meaning to the words "or participated in", we are compelled to conclude that, pursuant to Section [704], a quorum of members can consist of members not physically present at the meeting but who nonetheless participate in the meeting and that such quorum can take official action, provided that, the absent members are able to hear the comments of and speak to all those present at the meeting and all those present at the meeting are able to hear the comments of and speak to such absent members contemporaneously. Participation by speaker telephone clearly satisfies this mandate.

*Id.* at 395–396, 613 A.2d at 553. Also instructive is this Court's more recent holding that "[a]lthough official actions must be conducted in open meetings, 'the Sunshine Act does not require agency members to inquire, question and learn about agency issues only at an open meeting.'" *Belitskus v. Hamlin Township,* 764 A.2d 669, 672 (Pa.Cmwlth.2000) (quoting *Sovich v. Shaughnessy,* 705 A.2d 942, 945–946 (Pa.Cmwlth.1998)).

We agree with the trial court that Citizens failed to state a claim under the Sunshine Act. According to the record submitted by Citizens to this Court, Supervisor Bell was present for the Township's August 23, 2005, public meeting. The pri-

mary agenda item for this meeting was the rezoning application submitted by a prospective tenant of Victory Centre. Nevertheless, the Supervisors heard numerous and lengthy comments from the public regarding the pending TIF proposal. Also, at the September 13, 2005, Township meeting, the Board formally considered the TIF ordinance and heard comments from the public. At the conclusion of the hearing, which the Supervisors continued to allow more time for their deliberation, Supervisor Charles M. Kosey stated on the record that "Mr. Bell is in the hospital. And Mr. Bell will be given all this information so he can be a part of this when we decide what we're doing. And it will be done." Reproduced Record at 471a. It is Citizens' suggestion that Supervisor Bell was somehow uninformed, and that they were prohibited from informing him. This contention is belied by their own record on appeal. It is also contrary to the strong presumption that public officials perform their duties in good faith. *City of Lancaster*, 682 A.2d at 1372.

For all of these reasons, we affirm the order of the trial court.

### ORDER

AND NOW, this 25th day of June, 2007, the order of the Court of Common Pleas of Washington County in the above-captioned matter, dated March 28, 2006, is hereby AFFIRMED.

1. Act of July 11, 1990, P.L. 465, *as amended*, 53 P.S. §§ 6930.1–6930.13.

2. Tax-increment financing generally commits a community to devote new property tax revenue generated by a development to pay for the development's infrastructure that a developer would normally have to assume. If a TIF is not granted, the increase in tax revenues would go into the local government general fund to carry out their municipal, educational or social welfare responsibilities.

## DISSENTING OPINION BY Judge PELLEGRINI.

I respectfully dissent from the majority's decision finding that the trial court did not have subject matter jurisdiction over the decisions of local governments to grant tax increment financing for property that they deem to be deteriorated or blighted.

### A.

This case involves the grant of tax-increment financing (TIF) under the Tax Increment Financing Act (Act)[1] to be used for a 211–acre of vacant land in Washington County to be used for commercial development.[2] The land had been previously zoned as agricultural but was recently rezoned as commercial. The proposed project would require a private investment of $400,000,000 and a local TIF portion of $14,000,000 with a state contribution of $15,000,000. Trinity Area School District *et al;* Washington County *et al;* and South Strabane Township *et al,* each had the creation of a TIF district and participation in a TIF proposal approved by their respective Boards: Trinity Area School's Board by a vote of 6 to 3 on August 4, 2005; Washington County's Board by a vote of 2 to 0 on August 5, 2005; and the South Strabane Township's Board by a vote of 3 to 2 on October 25, 2005.

On September 6, 2005, Citizens filed two complaints requesting equitable relief alleging that the area of the proposed development, among other things, was not "blighted."[3] On that same date, Citizens

3. They also argued that the trial court lacked subject matter jurisdiction over their appeals; if the trial court had jurisdiction, then the trial court erred by sustaining the taxing districts' demurrers because their complaints averred facts sufficient to establish bad faith in the designation of the property as blighted; they were entitled to challenge the actions of the individual public officials in approving the TIF proposal; and there was a violation of the Sunshine Act when the tie-breaking vote was cast by Supervisor Bill Bell by telephone from his home.

filed with the trial court two local agency law appeals from the decisions of the Trinity Area School Board's decision and the Washington County Board of Commissioner's decision adopting the TIF proposal. On November 4, 2005, Citizens filed an appeal from the decision of the South Strabane Township Board of Supervisors as well as a complaint requesting equitable relief making the same allegations as in the previous complaints. In each complaint, Citizens contended that by granting a TIF for property not blighted, each individual taxing body abused its discretion, was contrary to statute and otherwise improper. The Taxing Bodies each filed preliminary objections and motions to strike for lack of subject matter jurisdiction.

The trial court first addressed the preliminary objections on subject matter jurisdiction and held that it lacked subject matter jurisdiction to rule on legislative enactments, citing *Mercurio v. Allegheny County Redevelopment Authority*, 839 A.2d 1196 (Pa.Cmwlth.2003),[4] and *Ondek v.*

*Allegheny County Council*, 860 A.2d 644 (Pa.Cmwlth.2004).[5] Regarding the question of blight, the trial court found that the TIF district could be designated as blighted by acts of the taxing units, and certifying an area as blighted was not subject to judicial review where there had been no showing that the determination of the blight was made with fraud or bad faith. Agreeing with the trial court's reasoning, the majority affirms. I disagree with the majority because I believe the certification of blight necessary to grant a TIF is challengeable in equity no matter how that action is characterized.

The cornerstone of the majority opinion is that because a condemnation based on a certification of blight made under the Urban Redevelopment Law[6] is not challengeable in equity or under the local agency law appeal, then a certification of blight used in granting a TIF is similarly not challengeable in equity. However, a certification of blight in a condemnation case is not challengeable in equity or under the

---

**4.** *Mercurio* involved whether a challenge to a TIF ordinance could be brought more than 30 days after its enactment. While acknowledging that their action had not been filed within 30 days, those challengers contended that the action was still timely because the required hearing had not been held. We rejected that argument because Section 5571(c)(5) of the Judicial Code, 42 Pa.C.S. § 5571(c)(5), provided a 30–day time limitation for challenging defects in the enactment of ordinances and resolutions. However, our Supreme Court effectively overruled that portion of *Mercurio* in *Glen–Gery Corporation v. Zoning Hearing Board of Dover Township*, 589 Pa. 135, 907 A.2d 1033 (2006). *Glen–Gery* involved a challenge to an enactment of a subdivision ordinance enacted four years earlier because, as in *Mercurio*, a required hearing had not been held. We held that 42 Pa.C.S. § 5571(c)(5) barred the claim because it was brought well beyond 30 days after the ordinance had been enacted. Our Supreme Court reversed, holding "that a defect in the enactment renders any time bar null and void as the statute is, in its entirety, void *ab initio*."

907 A.2d at 1043. Rather than automatically dismiss the claim as time barred when an action was not filed within 30 days, our Supreme Court held that it must be determined whether the procedural defects were such that it "implicate[d] notice, due process, or other constitutional rights of a party ... if proven, could render the statute void ab initio." 907 A.2d at 1037, footnote 5.

I recognize that in *Mercurio*, we went on in *dicta* to state that the certification of blight could only be challenged if fraud or bad faith were made out, but for reasons set forth later in the opinion, I believe that statement is not in accord with later case law.

**5.** *Ondek* held that the granting of a TIF was not an adjudication subject to appeal under the Local Agency Law. 2 Pa.C.S. §§ 551–555, 751–754. Based on that opinion, I agree that Citizens' Local Agency Law appeals cannot be maintained.

**6.** Act of May 24, 1945, P.L. 991, *as amended*, 35 P.S. 1701–1747.

local agency law because the General Assembly created an adequate and exclusive remedy at law under the Eminent Domain Code. That Code provides that a condemnee who desires to challenge the certification must do so by filing "preliminary objections" to the declaration of taking. This was explained in *Faranda Appeal,* 420 Pa. 295, 300–302, 216 A.2d 769, 772–774 (1966):

> Faranda's final objection raises a more difficult and novel question. By his preliminary objections, Faranda has challenged the Authority's *power and right* to condemn the property in question by his assertion that the said property is not, *in fact,* blighted. Since the condemnation of property is limited by our Constitution, supra, to a taking for a *public use* and since the only basis for the Authority's present taking is that the elimination of a blighted area is such a public use (*Belovsky v. Redevelopment Authority of Philadelphia,* 357 Pa. 329, 54 A.2d 277, 172 A.L.R. 953), Faranda seeks to show that the area is not blighted thereby negativing the *power or right* of the Authority to condemn. The Authority counters by saying that an action in equity rather than a preliminary objection is the proper procedural method to follow in challenging the Authority's taking. In the Authority's view, a preliminary objection should be limited to attacking the wisdom, rather than the lawfulness, of the condemnation.

> An examination of the language of Section 406(a) of the Eminent Domain Code, supra, clearly substantiates the soundness of the view urged upon this court by Faranda. That section provides: ' * * * Preliminary objections shall be limited to and shall be the *exclusive* method of challenging (1) the *power or right* of the condemnor to appropriate the condemned property unless the same has been previously adjudicated * * *' (Emphasis supplied).

See also: Snitzer, Pennsylvania Eminent Domain, Section 406.1 wherein the author says: 'Section 406 specifically provides that the filing of preliminary objections shall be the sole and exclusive remedy available to condemnees to challenge the condemnation. As the comment notes indicate, the intent of this section is to provide the exclusive method of challenging the power to condemn, the sufficiency of the security, the declaration of taking and procedure. * * * ' Thus it is clear that the new Eminent Domain Code sets forth a complete and exclusive method of challenging the taking. The Authority's argument suffers from the inherent fallacy of urging that Faranda is questioning not the power of the Authority to condemn but rather the wisdom of the action it has taken. As we have said, supra, the taking is constitutional only if it is for a public use; if the purpose is not for a public use, the taking is unconstitutional. Herein, the Authority bottoms its public use in declaring the area involved to be blighted, a determination challenged by Faranda, thereby making the thrust of Faranda's attack directly to the Authority's power, not to its wisdom. *McSorley v. Fitzgerald,* 359 Pa. 264, 59 A.2d 142; *Belovsky, supra; Ormsby Land Co. v. Pittsburgh,* 276 Pa. 68, 119 A. 730.

The Authority urges that Faranda's remedy is by a suit in equity. However, we have recently held that a court of equity has no jurisdiction to determine whether a municipal authority has the right of eminent domain or whether it has properly exercised any right of eminent domain; *Cunfer v. Carbon Airport Authority,* 414 Pa. 408, 200 A.2d 768. *See also Balazick v. Dunkard–Bobtown Municipal Authority,* 414 Pa. 182, 199 A.2d 430. **Similarly, the many cases cited by the Authority in its brief for the proposition that equity is the**

**proper forum are not controlling in that such cases were decided prior to the passage of the present Eminent Domain Code.**

By the clear language of the statute, the legislature has mandated that preliminary objections constitute the exclusive method of challenging the power of the condemnor to take private property. Faranda has challenged the Authority's *right to condemn* and has raised this challenge properly through the medium of preliminary objections. 'It is commonplace that where the legislature has provided a remedy or procedure, that remedy or procedure is exclusive and alone must be pursued.' *Schwab v. Pottstown Borough,* 407 Pa. 531, 180 A.2d 921, 923; *Cunfer v. Carbon Airport Authority, supra; Jacobs v. Fetzer,* 381 Pa. 262, 112 A.2d 356. (Emphasis added.)

Judicial review of a certification of blight in a condemnation case then is not precluded—it is only precluded in equity or local agency law because the General Assembly has provided an exclusive remedy to challenge the taking through preliminary objections to the declaration of taking. In consideration of those preliminary objections, the property is given a full evidentiary hearing to establish that the certification was improper. Moreover, the property owner challenging the certification of blight does not have to, as the majority suggests, establish that the certification was done through fraud or bad faith, only that the certification of blight by the governmental entity was arbitrary or capricious. *Simco Stores v. Redevelopment Authority of Philadelphia,* 455 Pa. 438, 317 A.2d 610 (1974); *Cass Plumbing & Heating Company, Inc. v. PPG Industries, Inc.,* 52 Pa.Cmwlth. 600, 416 A.2d 1142 (1980).[7]

As can be seen, absent the statutory remedy set forth in the Eminent Domain Code, equity would have jurisdiction to hear whether the property was, in fact, blighted.

---

**7.** Judge Blatt dissented in *Cass* stating: "Our Supreme Court, in *Simco Stores v. Redevelopment Authority of Philadelphia,* 455 Pa. 438, 442, 317 A.2d 610, 612–613 (1974), restricted lower courts' scope of review over planning commissions' certifications of blight, stating that: 'On review a condemnee should be given an opportunity to prove that a certification of blight is arbitrary or capricious.... It does not require the lower court to substitute its discretion for that of the legislatively-granted discretion of the Commission.'" As Justice Roberts noted in his dissent, this procedure "impermissibly limits the property owner to only a faint shadow of his right to judicial review." *Simco, supra,* 455 Pa. at 447, 317 A.2d at 615; *Cass,* 416 A.2d at 1150.

Justice Roberts would have allowed a *de novo* review of a certification of blight stating: "Simco's challenge ... 'seeks to show that the area is not blighted thereby negativing the Power or right of the Authority to condemn.' Contrary to the assertions of the majority, appellants do not ask the court to substitute its conception of blight for that of the Authority. What appellants seek is a judicial determination whether the Authority exceeded the power granted it by the Legislature. The court in ruling on preliminary objections to a declaration of taking must make an initial determination that the area condemned is in fact blighted as defined by the Legislature. This determination, fully within the competence of a judicial tribunal, decides the threshold question of the Authority's 'power or right' to condemn. Only if it is concluded that the Authority is acting within its legislatively-granted power, will a court confront the question whether the Authority's action was arbitrary or capricious. While a court's function is not to assess the wisdom of an administrative declaration of blight, a court must nevertheless fulfill its affirmative duty in condemnation cases to review the challenged exercise of the Authority's power." *Simco,* 455 Pa. at 445–446, 317 A.2d at 614–615. (Citations and footnotes omitted.)

**B.**

While the Tax Increment Financing Act has a similar procedure to the procedure in the Redevelopment Law, in that an authority can certify to the governing body that the area is "blighted" based on the same standards contained in the Redevelopment Law, the challenge here has a completely different constitutional and legal framework. Tax increment financing is authorized by Art. 8 of the Pennsylvania Constitution entitled "Taxation and Finance." Section 2 of that Article, entitled "Exemptions and special provisions," provides in subsection (b)(iii) for Tax Increment Financing, stating that the General Assembly may, by law:

> (iii) Establish standards and qualifications by which local taxing authorities may make uniform special tax provisions applicable to a taxpayer for a limited period of time to encourage improvement of deteriorating property or areas by an individual, association or corporation, or to encourage industrial development by a non-profit corporation.

The General Assembly implemented established standards and qualifications in the Tax Increment Financing Act.[8]

Like other tax cases where there is not an adequate remedy at law, Citizens have alleged that the Taxing Bodies have committed an illegal act by granting a TIF for property that does not meet the statutory requirements for being blighted, equity has jurisdiction. Where there is no legal remedy or even where the legal remedy cannot afford "full, perfect and complete" relief, "equity extends its jurisdiction in the furtherance of justice." *Pentlong*

*Corp. v. GLS Capital, Inc.*, 573 Pa. 34, 820 A.2d 1240, 1245 (2003), quoting from *Pennsylvania State Chamber of Commerce v. Torquato*, 386 Pa. 306, 125 A.2d 755, 766 (1956). Just as equity had jurisdiction to hear certification of blight in a condemnation case, equity has jurisdiction to hear a challenge to a certification of blight to grant a TIF.

TIF's are not granted so that a developer can develop a project more profitably—they are granted so that the public purpose of the elimination of blight can be accomplished. If a TIF is granted for property that is not blighted, the public is not receiving the "bargain" to which it is entitled. In this case, because Citizens as taxpayers have standing to maintain this action, *Consumer Party of Pennsylvania v. Commonwealth*, 510 Pa. 158, 507 A.2d 323 (1986), and equity has jurisdiction, I would reverse the trial court.

For the foregoing reasons, I respectfully dissent.

Judges McGINLEY and SMITH–RIBNER join in this dissent.

---

8. Section 2 of the Urban Redevelopment Law provides that: "It is hereby determined and declared as a matter of legislative finding-(a) That there exist in urban communities in this Commonwealth areas which have become blighted because of the unsafe, unsanitary, inadequate or over-crowded condition of the dwellings therein, or because of inadequate planning of the area, or excessive land coverage by the buildings thereon, or the lack of proper light and air and open space, or because of the defective design and arrangement of the buildings thereon, or faulty street or lot layout, or economically or socially undesirable land uses." 35 P.S. § 1702(a).